## C. D. COGGESHALL & CO. v. SMILEY, Co. Treas.

No. 20142. Opinion Filed Dec. 10, 1929.

Rehearing Denied Feb. 25, 1930.

Brown & Stater and Burford, Miley, Hoffman & Burford, for plaintiff in error.

Byron Kirkpatrick, Co. Atty., Hugh Webster, Asst. Co. Atty., M. C. Spradling, City Atty., and Ed. O. Cassidy, for defendant in error.

ANDREWS, J. This cause involves the last half of the tax for the fiscal year beginning July 1, 1927. The first half thereof was involved in cause No. 20141, this day decided, 140 Okla. 242, 283 Pac. 788. The parties appear herein as they did in the trial court, and will be referred to herein as plaintiff and defendant, respectively.

Under date of September 16, 1929, an order of dismissal was entered in this cause on stipulation of the parties dismissing the appeal as to certain portions of the tax involved herein. The decision in this case is subject to that order.

It was stipulated and agreed that the decision in this cause shall apply with equal force and effect to the companion cases as listed in a stipulation entered into between the parties hereto.

The petition of the plaintiff was divided into ten causes of action. Each of these causes was considered separately in the briefs, and will be so considered in this opinion. In addition thereto, there was a general contention that the petition as a whole did not state a cause of action, for the reason that the tax sought to be recovered was not paid at the time and in the manner provided by law and before delinquency. That identical contention was made in cause No. 20141, supra, between the same parties, and it was therein held:

"Sections 9719 and 9971, C. O. S. 1921, contemplate that county taxing officials will perform their duties in ample time so that a taxpayer may have the benefit of the provisions thereof. Taxpayers have a constitutional right to a reasonable time in which to pay taxes after payment thereof is possible and before the same becomes delinquent and to recover illegal taxes paid under protest. Where the county taxing officials have failed to certify the tax rolls to the county treasurer at the time and in the manner provided by the statute fixing the date of maturity and delinquency thereof, payment under protest may be made by a taxpayer and suit maintained by him to recover the alleged illegal tax notwithstanding payment of the tax is made after the date of delinquency provided by the statute"

—which rule is applicable to the facts as shown by the petition in this case, and the same rule is herein announced.

The defendant contends that there is no evidence in this record as to when the tax rolls were certified by the county assessor to the county treasurer. The general demurrer to the amended petition was overruled. We note that this case was tried on October 22, and 23, 1928. Prior thereto and on October 15, 1928, the trial court had sustained a demurrer to the amended petition in the companion case, No. 20141, in this court, which involves the first half of the tax for the year 1927-28. In that case it was admitted in the briefs filed in this court by the defendant that these tax rolls were certified on December 1, 1927. The amended petition in this case alleges that to be the date of certification. The answer to the amended petition in this case contains the following:

"* * * And if the plaintiff relies upon its right to pay the first half of said taxes for said tax-paying year within 60 days after the certification of the assessment rolls to the county treasurer, as alleged in its amended petition, that it does so by the purported authority of chapter 151, Session Laws of 1923. * * *"

While this is not a direct admission of the date of certification as alleged by plaintiff, it is, in our opinion, an admission that the tax was paid within 60 days after the certification, which brings it squarely within the rule announced in cause No. 20141, supra. The defendant, in his brief, says:

"* * * In the absence of such proof, it

is presumed that said rolls were certified by the assessor to the treasurer on or before October 1, 1927. * * *"

To our mind that would be a violent presumption in the face of a record which shows that the special election. hereinafter referred to, for an increased levy was held on October 11, 1927. There is no merit in this contention of the defendant, and the ruling of the trial court thereon is affirmed.

The first cause of action involves four contentions. The trial court sustained a general demurrer to the evidence offered in support of each of them.

The first contention is that there was charged in the financial statement and estimate $3,184.92 for "Warrants—Outstanding Previous Years," and that the result thereof was to increase the appropriation to that amount without authority of law. No attack is made on "Warrants—Outstanding Current Year." It is contended by the plaintiff that if warrants outstanding for previous years are to be included as a liability, uncollected taxes for previous years should be included as an asset.

This court in Albrecht v. Jones, 130 Okla. 277, 267 Pac. 270, held that uncollected taxes for previous years should not be included. That decision is clear and cogent, and the rule therein announced must be applied in this case.

Section 9695, C. O. S. 1921, provides:

"The statement of estimated needs shall be itemized so as to show by classes, first, the several amounts necessary for the current expense of the municipality and each officer and department thereof."

There is no provision in our statutes for the inclusion in the financial statement of amounts necessary for expenses for preceding or succeeding years. The authority of our taxing officials is limited to the expenses for the current year.

Section 9699, C. O. S. 1921, in so far as it is applicable to the question presented, provides:

"The excise board, * * * after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation, * * *"

—and this court in construing that section in Albrecht v. Jones, supra, held that the language "surplus balance" means "surplus balance estimated to be on hand." We cannot omit the word "surplus" from either

this decision or the statute. It has a fixed and definite meaning, and was used advisedly. We hold that the word "surplus," as used in the statute, means an amount in excess of the legal indebtedness contracted during the same fiscal year. If there remains no amount in excess of the legal indebtedness contracted during the fiscal year, there is no surplus.

When a valid appropriation is made, contracts may be entered into for the purpose for which the appropriation was made, aggregating an amount not in excess thereof. Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389. These contracts must be settled from that appropriation, and they cannot be carried over and paid from an appropriation for a subsequent year. Gulf Pipe Line Co. v. County Treasurer, 110 Okla. 163, 236 Pac. 896. When a levy is made to raise the money appropriated, an additional amount of ten per cent., as provided by the statutes, is added. If indebtedness is contracted to the full amount of the appropriation and only the amount of the tax levied, less ten per cent., is collected, there can be no surplus from the levy. If indebtedness is not contracted to the amount of the appropriation, and the amount of the tax. less ten per cent., is collected, or if any portion of the ten per cent. of the tax is collected, there will be a surplus from the levy. That surplus may appear at the end of the current year, and will so appear if the tax is all collected by that time, but, under our system for collecting taxes, it is probable that it will not appear until some succeeding year. Whenever it does appear, it must be accounted for as provided by section 9699, Id. Ryan, Co. Treasurer, v. Roach Drug Co., 113 Okla. 130, 239 Pac. 912.

Section 9699, Id., provides for the deduction of a balance of "revenue or levy." It will be noted that it does not provide for the deduction of a balance of "appropriation." We think there is a material difference between "revenue" and "levy" as so used. Evidently "revenue" was here used to distinguish receipts from sources other than by levy, and we so hold. Estimated income from other sources is considered in determining the amount of the appropriation, and where only the amount estimated is received, there could not be a surplus from revenue. But where the income actually received from other sources exceeds the estimated receipts from other sources, there is a surplus balance of revenue. Where there is such a surplus, it must be accounted for as provided by section 9699, Id.

The fact that warrants are outstanding

and unpaid at the end of the fiscal year for the reason that the tax levied and estimated receipts from other sources have not been collected, does not authorize the inclusion of the amount of those unpaid warrants in the computation of the amount necessary to be levied by taxation for the current year. Their inclusion therein places upon the tax-payer for the current year a burden of taxation which, under our law, rests solely on the taxpayer of the year in which the indebtedness was contracted. To include such warrants in a current estimate or appropriation would be to increase the amount of that appropriation and the tax levy for that year. If the old warrants were canceled, the effect would be to give the warrant holders priority over the holders of indebtedness contracted for the current year; if the old warrants were not canceled and new ones were issued, there would be a duplication, and if the old warrants were not canceled and new warrants were not issued, then the appropriation would include an amount which could be used for other purposes. The only purpose of considering this item as a liability is to increase the amount of the appropriation for the current year. Defendant contends that to be necessary in order to pay these warrants. That contention leads to the conclusion that warrants are to be issued against the current appropriation for the purpose of paying unpaid warrants drawn against an appropriation for a prior year. We cannot follow the contention of the defendant in this respect. Under the rule announced in Gulf Pipe Line Co. v. County Treasurer, supra, and Ryan v. Bass Furniture Co., 113 Okla. 86, 241 Pac. 786:

"A county and its subdivisions cannot divert taxes levied for current expenses to the payment of existing indebtedness, created by the municipality during the previous fiscal year."

In the latter case it was said:

"The officers of government charged with the duty of estimating tax levies should rigidly follow the constitutional and statutory provisions relating thereto, and should refrain from any ingenious device to impose heavier burdens upon the taxpayers, other than that permitted by the plain expression of the Constitution and laws of the state."

The inclusion of this item in the financial statement imposed an illegal burden upon the property of the plaintiff, and the trial court was in error in sustaining a demurrer to the evidence offered by the plaintiff in support of this contention.

The question is asked, How are these warrants to be paid? The answer is that they are to be paid by the county treasurer out of the tax collected from the levy for the year for which the appropriation against which they were drawn was made. If the tax is not collected in an amount sufficient to pay them, they may be funded, but they cannot be paid, either directly or by "any ingenious device," from a tax levy for any succeeding year.

In O'Neil Engineering Co. v. Incorporated Town of Ryan et al., 32 Okla. 738, 124 Pac. 19, this court had under consideration the provisions of sections 26 and 27, art. 10, of the Constitution, and said:

"The intention and plain effect of the provision of the Constitution under consideration is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue, in hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required. Campbell v. State ex rel., 23 Okla. 109, 99 Pac. 778; City of Ardmore v. State ex rel., 24 Okla. 862, 104 Pac. 913; Spilman v. City of Parkersburg, 35 W. Va. 605 14 S. E. 279; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; San Francisco Gas Co. v. Brickwedel, 62 Cal. 641; McGowan v. Ford, 107 Cal. 177, 40 Pac. 231; Sutro v. Pettit, 74 Cal. 332, 16 Pac. 7, 5 Am. St. Rep. 442; First National Bank v. Doon Dist. Tp., 86 Iowa, 330, 53 N. W. 301, 41 Am. St. Rep. 489; Lake County v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060. In the Campbell Case, supra, Mr. Justice Williams, in discussing this provision, says: 'The settled purpose has been to place restrictions and limitations upon the taxing power by a restriction upon the outlay of the money after it has been collected by the people. Under this provision, the government is dependent from year to year upon the periodical vote of supplies.'

"And further: 'No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness,' "

—and held to the same effect.

There can be no room for confusion as to our financial plan if the Constitution and acts of the Legislature are followed. The trouble arises when public officials find their actions hampered or their plans impossible by reason of a scarcity of funds. In order to carry out their intentions or complete their plans they proceed in contravention to the limitations placed upon them and make tax levies which are excessive and

void. The people have no way of preventing the imposition of such an illegal tax. Their only remedy is to pay the same under protest and sue for its recovery. The effect of this decision is not to take away from the various municipalities funds belonging to those municipalities, but to prevent public officials, by virtue of the power that exists in them, taking money from taxpayers in the form of taxation in plain violation of the limitations contained in the Constitution and acts of the Legislature. When taxing officials make tax levies according to law and expend the funds derived from taxation in the manner provided by law, there will be no necessity for such suits as this one.

The judgment of the trial court on this contention is affirmed.

The second contention on the first cause of action involves two supplemental appropriations. Plaintiff contends that sums of money were wrongfully transferred, thereby destroying what would otherwise have been a surplus at the close of the fiscal year.

It is first argued that written assent of the officers to the changes was not given. The burden of proof of that allegation was on the plaintiff and plaintiff did not sustain that burden.

The defendant attempted to justify supplemental appropriations by the provisions of section 9701, C. O. S. 1921. That section provides:

"No supplemental or additional appropriation shall be made for any county, township, city, town or school district in excess of the income and revenue provided or accumulated for the year. * * *"

This language is clear, and before there can be a supplemental appropriation the income and revenue necessary therefor must have been accumulated or provided for that year. That is a condition precedent. The procedure is outlined in this section and culminates in the following:

"Second: If the financial statement herein required shall correctly reflect a surplus in revenue in any fund available for current expenses, and the excise board shall so affirmatively find, it may make supplemental appropriations to an amount not exceeding the aggregate of such surplus."

It will be noted that this section requires not only a finding by the excise board but the existence of a "surplus in revenue in any fund available for current expenses."

The evidence shows the following:

Analysis of Surplus

Surplus Items:
Over collections on 1925 taxes _____$ 6,661.31
From back taxes _____ 12,742.71
Increase in cash balance on account of
  Free Fair overdraft June 30, 1926 _____ 6,617.77
Lapsed prior year's appropriations _____ 15,889.98
Balance on Free Fair appropriation _____ 2,750.58
Unused interest reserve _____ 73.69

Total _____$44,736.04

The defendant attacks this showing and says that this "analysis of surplus" is no part of the financial statement, is not required, and is merely surplusage. The record shows that it was set up and published as a part of the financial statement. It is at least a sufficient showing as against a demurrer to the evidence. The statute not only requires a finding by the excise board of the existence of a surplus, but the actual existence, and in the absence of this analysis of surplus there is nothing to show the existence of a surplus. If we could take the defendant's view thereof, we would hold that the supplemental appropriation failed, but we prefer to consider the analysis of the surplus as the showing of the existence thereof.

When we examine this analysis, we find that there is an item of $6,617.77 and one of $2,750.58 that involve the free fair appropriation. Elsewhere in this opinion we discuss the free fair appropriations and levy and hold that this levy is in addition to that for current expenses. Since it is in addition to that for current expenses, it is not a "fund available for current expenses." The transfer cannot be made from a fund in excess of the fund for current expenses to a fund for current expenses. To permit such would be to permit an increase in the current expense fund over that authorized by the statute. Dickinson v. Blackwood, Co. Treasurer, 76 Okla. 175, 184 Pac. 582. These free fair items were wrongfully included in the surplus. The other items shown may or may not constitute a surplus, but on the face of the record and so far as the evidence shows they do constitute a surplus.

The trial court was in error in sustaining a demurrer to the evidence offered by the plaintiff in support of this contention, and the judgment thereon is reversed.

The third contention on the first cause of action involves a $10,000 levy for agricultural purposes. The financial statement and estimate shows an estimate of needs of $8,810, which is duly itemized. The total appropriation for that purpose was $18,810. The defendant contends that this additional $10,000 was shown in the

financial statement and estimate as free fair fund for the erection of live stock and exposition buildings, and admits that it was not included in the levy of ½ mill for free fair purposes, for which $76,066.28 was appropriated.

Plaintiff contends that both the free fair levy and the $10,000 in question are above the statutory 4 mill limit. We will not attempt a computation as to whether or not the $10,000 is in excess of the 4 mills levy. If it is in excess thereof, it is void. We will leave to the trial court a determination of that question. If it is not so excessive, then we think that its inclusion in the financial statement and estimate under the heading of "free fair" did not prevent the excise board making the appropriation under the "general fund agriculture."

The action of the trial court in sustaining the demurrer to the evidence offered by the plaintiff on this contention is reversed, and the cause is remanded, with directions to cause a computation to be made and determine whether or not this $10,000 appropriation was in excess of the 4 mills levy for support of the county government.

The fourth contention of the first cause of action was abandoned by the plaintiff and is not briefed. The judgment of the trial court thereon is affirmed.

The second cause of action involves the free fair levy. Plaintiff admits the legality of one-half thereof as having been authorized by chapter 85, S. L. 1924, and upheld in Simmons v. Stuckey, 113 Okla. 200, 241 Pac. 124, and contends that the levy of .25 mills is illegal and void for the reason that it is in excess of the 4 mills limitation. Plaintiff directs an attack at chapter 159, S. L. 1925, on the theory that the act did not authorize a levy in excess of 4 mills, and cites in support thereof the reasoning in Missouri, K. & T. Ry. Co. v. Bennett, Co. Treas., 122 Okla. 102, 250 Pac. 1021, and Acme Milling Co. v. Bonaparte, Co. Treas., 125 Okla. 15, 257 Pac. 284. We decline to follow the reasoning of the plaintiff on this contention, and hold that the rule announced in Lusk v. Botts, 64 Okla. 52, 166 Pac. 172, and Lusk v. Eminhiser, 53 Okla. 785, 158 Pac. 915, is controlling. The financial statement and estimate shows that this levy, while included in the levy for current expenses, was in fact for the "free fair fund." We find no error in sustaining the demurrer to the amended petition of the plaintiff on this contention, and the order of the trial court is affirmed.

There is a second contention made on this second cause of action and that is that the financial statement and estimate shows a balance in the free fair fund of $6,963.45 which was not included when the appropriation was made and the levy fixed, and that for that reason the levy is excessive. The defendant answers this contention with evidence tending to show that the financial statement and estimate was erroneous in that this balance was included with other balances in making the appropriation and levy. For this court to settle this contention would require an examination of the mass of figures submitted. The trial court sustained a demurrer to the evidence offered by plaintiff in support thereof, which we think was error under the rule of construction followed by this court with reference to demurrers to evidence. The evidence was conflicting, and we know of no rule that would authorize the sustaining of a demurrer thereto. The court should hear this evidence and determine from the evidence what the facts are with reference thereto, so that when the case comes here on appeal, if it does, it will not be necessary for this court to examine the entire record to determine what the facts are.

The judgment sustaining the demurrer to the evidence offered by plaintiff in support of this contention is reversed, and the cause is remanded, with directions to the trial court to hear evidence and determine whether or not this balance of $6,963.45 was considered by the excise board in making the appropriation and levy.

The third cause of action involves a levy for separate school purposes and is predicated upon alleged error in the apportionment to the separate schools. The plaintiff contends that the judgment rendered thereon was agreed upon and the plaintiff raises no question in regard thereto, but the defendant contends that the judgment was not agreed upon and defendant questions the judgment on what he says is a cross-appeal.

In our opinion this contention is settled by the record, from which we quote the following:

"Mr. Cassidy: We have agreed on the judgment on the third cause of action. The Court: Show judgment for the plaintiff on the third cause of action as per journal entry. Mr. Cassidy: On the third cause of action, I understand your Honor to render judgment for the plaintiff for .126 mills? The Court: You have agreed on that, have you? Mr. Stater: Yes. The Court: That is all right, is it? Mr. Stater: That is all right."

But if it was not so settled, the defendant cannot take advantage of it, for the reason that he has filed no cross-petition in error.

We find no error in the rendition of this judgment, and the same is affirmed.

The fourth cause of action involves the county highway levy. The trial court sustained a demurrer to the amended petition.

Plaintiff makes two contentions, the first of which is that the levy of 1 mill over and above the 4 mills general limitation is void for the reason that it was not authorized at an election as provided by law, and the second is the failure to itemize the estimate for the county highway fund.

These identical contentions were made in causes No. 19698, Grubb v. Smiley, Co. Treas., 142 Okla. 19, 285 Pac. 38, this day decided. We there denied the first contention and sustained the second. We make the same ruling here.

There was no error in the sustaining of the demurrer to the fourth cause of action in the amended petition, and the order of the trial court is reversed.

The fifth cause of action involves a levy of 2 mills for the Tulsa city general fund of 8 mills. It is contended that 2 mills thereof is illegal and void for the reason that it was not authorized at an election as provided by our statutes. The defendant contends that the additional 2 mills were authorized at an election held under the provisions of chapter 61, S. L. 1923-24. This contention was made in cause No. 19,-698, supra, and we there held that the said chapter did not apply. We apply the same rule here.

The evidence in this case shows no attempt to comply with the other provisions of our statute as to elections for increased levies, and the trial court was in error in rendering judgment for the defendant on this contention. The judgment of the trial court is reversed.

The second contention on this cause of action is that .21 mills of the city of Tulsa general fund is illegal and void because of the inclusion of an improper liability and the failure to include proper assets in determining the amount of the levy. Plaintiff waives any claim as to error in the outstanding warrants. He presents a claim that $33,914.68, shown as a liability against the surplus in the general fund as "reserve for appropriation," is not a legal obligation; that there can be no such thing as a "reserve for appropriation," and that the result of this was to reduce the available assets and increase the tax levy. The defendant answers this contention by stating that this

"* * * item represented the balance of an appropriation made during the fiscal year 1925-26, carried over into 1926-27 as a 'reserve for appropriation' as provided by law and lapsed on January 31, 1927, six months having expired since the end of the preceding fiscal year, June 30, 1926"

—and in another place by stating that this item

"* * * is a reserve for appropriation made by the excise board at the beginning of the new fiscal year 1927-28, said amount being the balance on hand unexpended and reserved to take care of uncompleted, unfulfilled contracts incurred during the preceding fiscal year, 1926-27."

At one time in Oklahoma public officials entered into contracts without regard to the amount of the appropriations made. They acted on the theory that the inhibition in a statute applied only to the issuing of warrants against the appropriation. The result of this was to exhaust the appropriation by the issuance of warrants, leaving contracts entered into prior to those for which the warrants were issued without any appropriation for the payment thereof, and judgments were then taken on these prior contracts. By this means municipalities expended more money than was appropriated.

The Legislature in 1925, in order to correct this condition, adopted Senate Bill No. 209, which appears as chapter 49, S. L. 1925. The effect of this act was to require all contracts to be submitted to the officers charged with keeping the expenditure records and to void any contract not certified by the officer charged with keeping the expenditure record to be within the appropriation. The act further provided that the amount of the contract should be charged against the unexpended appropriation when the contract was made, the latter provision reading as follows:

"Section 2. The cost of all supplies, material and equipment and the contract price of all public work shall be charged against the appropriation as made by the excise board at the time purchase is made or contract let, and the balance in the appropriations account after such charge is deducted, shall constitute the unincumbered balance available for expenditure."

Under that act and the general law, contracts may be made in an aggregate amount not exceeding the amount of the appropriation and a tax levy may be made in the

amount sufficient to produce a fund equal to the appropriation. At the end of the fiscal year contracts aggregating the amount of the appropriation may have been entered into and warrants in payment thereof may not have been issued for the reason that the contracts had not been completed. The effect of this would be to leave an appropriation which has not been expended, but the amount of which has been contracted. The defendant takes the position that an unexpended appropriation should be deducted from the surplus in the general fund and that there should be carried over into the new year as the balance on hand only the remainder after making this deduction, and that this is necessary in order that there be kept on hand sufficient funds to carry out the obligations of the county. We do not agree with this contention. Under section 2, chap. 49, S. L. 1925, only the "unincumbered balance" should be carried over as an asset into the next fiscal year. This is in line with what we had to say in our discussion of the first contention on the first cause of action herein. We want to make it clear here that "unincumbered balance" does not mean the unincumbered balance of the appropriation as provided by section 2, supra, but it means unincumbered balance of funds on hand. No part of the appropriation can be carried over into the next year, and only funds on hand may be so carried over. In determining the amount of funds on hand there should be deducted therefrom an amount sufficient to satisfy all of the valid outstanding contracts which were entered into as a charge against the appropriation, and the balance of the funds constitute a surplus which is carried over into the next year. This must be the rule, for an amount sufficient to equal the unexpended appropriation in those cases where the contracts had not been entered into aggregating the amount of the appropriation would result in a deduction of an amount which could not be used for the payment of claims, for the reason that there are no claims.

In the financial statement in evidence in this case for the fiscal year ending June 30, 1927, there was a showing of a cash balance on hand. This was arrived at by taking the cash balance July 1, 1926, and adding thereto the receipts from miscellaneous sources and the receipts from taxes for the years 1923, 1924, 1925, and 1926 and deducting therefrom warrants paid for the fiscal years 1926-27, 1925-26, and 1924-25, and prior years. To that cash balance was added the net tax levied for 1926, and there was deducted therefrom the 1926 tax-es collected to June 30, 1927, resulting in a total from which there was deducted as liabilities the amount of the 1926 warrants outstanding; the amount of the 1925 and prior years warrants outstanding; the amount due the sidewalk tax fund; the amount due the water earning fund, and a "reserve for appropriation," which is the item in question, leaving a deficit of $26,-278.23, and that deficit is explained thereon by the showing that the city, during the preceding year, had received from estimated income $28,172.21 less than the amount estimated to be received. In other words, the city, by this computation, shows that it expended during the preceding year the available assets and the amount of the deficit as shown. This is clearly in violation of all the rules announced by this court. Citation of authority is unnecessary. This court has always held that by no means of computation can a municipality expend more than the amount appropriated for that year.

It is doubtless for that reason that the city sought to have an appropriation made during the fiscal year in question denominated "reserve for appropriation," and the effect thereof is to impose a tax during this fiscal year to pay a debt contracted during preceding fiscal years. In line with the reasoning of Ryan, Co. Treas., v. Bass Furniture Co., supra, we hold that the inclusion in the computation of the tax levy for the fiscal year of the amount necessary to be used to care for contracts made during a preceding fiscal year is erroneous, and the levy so made is to that extent excessive and void.

There are other errors appearing in this record. It appears therefrom that this city made no effort to keep its financial transactions for each fiscal years separate. Here is a record that shows that funds received from taxes for the years from 1923 to 1926 were commingled and warrants outstanding issued for the years 1924-25 to 1926-27 were commingled. The evident intent of this plan is to keep the city warrants on a cash basis and to provide for the payment of each of those warrants notwithstanding the failure to enforce the tax levy against which the warrants were issued. There is no such thing known to the law as a "reserve for appropriation." Had this record shown a reserve retained for the purpose of paying outstanding valid indebtedness contracted during the preceding fiscal year, a different situation would have been presented. We cannot permit the deduction from the assets on hand of an amount in excess of the valid

outstanding indebtedness contracted during the fiscal year.

It is said that the enforcement of this rule would be to require the keeping of a separate set of books for each fiscal year. We agree with that statement. That is exactly what our statutes, in effect, provide, and that is, in effect, what this court has always said. That was the rule announced in Ryan, Co. Treas., v. Bass Furniture Co., supra, wherein it was said:

"It is apparent that, if the excise board considered a liability of $75,759.36, which did not in fact represent an obligation of or charge against said fund, the surplus was understated to this extent, and if the surplus was understated, the net amount to be raised by ad valorem taxation was in excess of the actual requirement for said fund to the extent of $75,759.36."

The defendant cites no decisions sustaining his contention.

The trial court was in error in rendering judgment for the defendant on this contention, and this judgment is reversed.

The sixth cause of action involves the cemetery, library, and park fund levies of the city of Tulsa.

This court, in Re Protest of Chicago, R. I. & P. Ry. Co., No. 20263, opinion filed June 25, 1929, 137 Okla. 186, 279 Pac. 319, sustained the library and park fund levies made pursuant to the acts of the Legislature of 1927. The reasoning of the court in that case applies to the cemetery fund. We do not think it necessary to consider the cemetery fund further.

We therefore hold that the levy for the cemetery fund, under the provisions of chapter 8 of S. L. 1927, the levy for the library fund, under the provisions of chapter 7, S. L. 1927, and the levy for park fund, under the provisions of chapter 69, S. L. 1927, may be in excess of the levy for the current expenses.

There is no error in rendering judgment for the defendant on the sixth cause of action, and the same is affirmed.

The seventh cause of action involves the Tulsa city sinking fund, and there are three propositions presented.

The first proposition is the contention of the defendant that the city has the right to deduct from its assets on hand at the close of the fiscal year an amount sufficient to pay the interest on bonds outstanding that will mature during the next fiscal year, and it is claimed that this right must exist, otherwise there would be no funds on hand for the purpose of paying the interest when it becomes due, as the interest matures before the maturity of the tax levied for the next fiscal year. The plaintiff denies this right.

The record in this case shows that all of the interest that matured during the preceding year had been paid and that there was a surplus on hand from which the defendant deducted an amount claimed to be necessary for the payment of interest on bonds which would mature during the next fiscal year.

The defendant contends that fiscal year provisions do not apply to the sinking fund and that the sinking fund is operated on a calendar year basis. No authority is cited in support of this contention, and we do not approve it. All of our financial affairs are handled on a fiscal year basis, and we know of no exception thereto. There is nothing in the case of Payne, Co. Treas., v. Gypsy Oil Co., 129 Okla. 18, 263 Pac. 138, cited by the defendant, that supports this contention. Defendant also contends that the provisions of our Constitution, secs. 26 and 27, art. 10, providing for the collection of an annual tax, require the application of the calendar year rather than the fiscal year to sinking funds and interest. There is nothing in the Constitution that should be so construed. "Annual tax," as there used, means that an annual tax must be collected, but there is nothing to provide that the annual tax shall be collected on a calendar year basis. We hold that the annual tax therein provided must be on a fiscal year basis.

We have heretofore discussed the handling of a surplus, and we do not consider it necessary to engage in a further discussion thereof other than to say that there is ample provision in our statute for handling the interest on bonds so as to avoid the difficulty which defendant suggests. It is a common practice authorized by our statute for the first interest coupon to be made payable at a time far enough in advance of the date of the bonds for tax funds to be available for the payment of the interest. Where a bond is dated July 2, 1929, the first possible levy for the payment of interest would be July 1, 1930, and the tax so levied would not be due until November 1, 1930. If the municipal authorities provide for the maturity of the first interest coupon thereon prior to November 1, 1930, they do so with full knowledge that there will be no fund for the payment of that interest at maturity, and the purchaser of the bond does so with the same knowledge. We cannot change

the law with reference to fiscal affairs to suit the convenience or individuals. We cannot approve a reservation of funds derived from a tax for a fiscal year for the purpose of paying a liability that will not arise until the next fiscal year. The trial court was in error in sustaining the demurrer to the evidence offered by the plaintiff on this contention, and that order is reversed.

The second proposition involves the determination of the number of tax levies necessary to create the sinking fund for retiring bonds at maturity. The defendant submits two propositions, as follows:

"First. Where bonds are issued, and the total amount matures on a specific date, shall the annual accrual be arrived at on the basis of the number of years bonds are to run from date of issue to date of maturity, or shall the annual accrual be determined by the number of years in which tax levies can be made, intervening between the date of issue and date of maturity?

"Second. Where bonds are issued maturing in installments, shall the annual accrual be based on the total years to run from date of issue to date of maturity, or on the tax years intervening between the date of issuance and date of maturity, or shall the annual accrual be determined on the basis of the installments, i. e., the number of tax years intervening between the date of issuance and the date of maturity of the installments?"

—and says:

"With these questions judicially answered, issues of the character involved are set at rest, and the creation of a sinking fund and its operations through the life of a bond issue will be purely a mathematical calculation."

Defendant contends that the number of levies is determined by the number of years intervening between the date of issue and the date of maturity of the various installments in which tax levies can be made, and the plaintiff contends that the number of levies is determined by the number of years from the date of issue to the date of maturity. Defendant cites in support of its contention the following: Going, Co. Treas., v. Atchison, T. & S. F. Ry. Co., 106 Okla. 258, 234 Pac. 346; St. Louis-S. F. Ry. Co. v. Forbess, Co. Treas., 111 Okla. 48, 237 Pac. 596; Missouri, K. & T. Ry. Co. v. Goad, Co. Treas., 117 Okla. 129, 245 Pac. 617; St. Louis-S. F. Ry. Co. v. Bailey, Co. Treas., 125 Okla. 183, 257 Pac. 784; Payne, Co. Treas., v. Gypsy Oil Co., 129 Okla. 18, 263 Pac. 138, supra, and St. Louis-S. F. Ry.

Co. v. Moore, Co. Treas., 25 Fed. (2nd.) 964. An examination of these cases discloses that they do not sustain the contention of the defendant. We think this matter is settled by the rule announced in St. Louis-S. F. Ry. Co. v. Bailey, supra, wherein Mr. Justice Lester, speaking for the court, said:

"Where a municipal subdivision of the state authorizes and creates a bonded indebtedness, and such bonds are issued on the same date and for the same purpose, and said bond issue is made payable in equal installments at intervals of 5, 10, 15 and 20 years, thereafter, said bonded indebtedness under article 10, sec. 26, of the Constitution of Oklahoma, and section 9695, C. O. S. 1921, is to be construed as one transaction, and a levy for a sinking fund accrual, in order to provide for the payment of said installments, should be made equally each year, and, arriving at the amount necessary to retire said bonds, it is necessary to divide the total amount represented in such bond issue by the number of tax-paying years between the date of said issue and the retirement of said issue."

We there held, and we now hold, that a bonded indebtedness is a single transaction, and that the fact that the bonds mature in installments at different intervals does not change its character. The necessary levy for sinking fund accrual is ascertained by dividing the entire amount of that bonded indebtedness in equal annual installments.

The next question presented is how many of those installments there should be. We will answer that question by giving two instances which speak for themselves. (For brevity we will consider the term as five years. We do not wish this to be construed as a holding that there could be five-year bonds.)

July 2, 1929, date of issuance of bonds.
July 1, 1930, date of first levy for sinking fund.
July 1, 1931, date of second levy for sinking fund.
July 1, 1932, date of third levy for sinking fund.
July 1, 1933, date of fourth levy for sinking fund.
July 2, 1934, date of maturity of bonds.

In order that there may be sufficient money on hand to retire these bonds at maturity as required by the Constitution, art. 10, secs, 26 and 27, supra, there can be only four levies made. A levy made July 1, 1934, would be ineffectual. In this instance four levies are all that are possible.

June 30, 1929, date of issuance of bonds.
July 1, 1929, date of first levy for sinking fund.
July 1, 1930, date of second levy for sinking fund.
July 1, 1931, date of third levy for sinking fund.
July 1, 1932, date of fourth levy for sinking fund.
July 1, 1933, date of fifth levy for sinking fund.
June 30, 1934, date of maturity of bonds.

In this instance there is ample time for five levies to be made, and there being time for the five levies, the same are required to be made.

We therefore state the rule to be that the number of levies authorized and required to produce funds available for the purpose of retiring bonds at maturity is the number of fiscal years intervening between the date of the issue and the date of maturity in which tax levies can be made and the tax collected. This will vary in accordance with the date of the bonds and the date of maturity thereof.

This court will not examine the voluminous record in this case to determine what portion of the levies shown were properly made. The trial court sustained a demurrer to the evidence, which on the face of this record was erroneous, and that order is reversed, and this cause is remanded, with directions to ascertain what portion of the levy involved in this transaction was erroneous.

The third contention on this cause of action is similar to the first and second, and we consider it unnecessary to discuss these matters further. The trial court erred in sustaining a demurrer to the evidence offered by the plaintiff in support of this contention, and that order is reversed.

The eighth cause of action involves the Tulsa city sinking fund. A demurrer was sustained to the amended petition on this cause of action. This cause of action is submitted by the plaintiff as being identical with that in Perrine v. Bonaparte, 140 Okla. 165, 282 Pac. 332. That case has been decided, and we apply the rule therein announced as decisive of this contention.

There was no error in sustaining the demurrer to the amended petition on this cause of action, and the order is affirmed.

The ninth cause of action involves a 7 mill levy of the general fund of the city of Tulsa school district, and the attack thereon is based on the supplemental appropriation made during the preceding fiscal year. Plaintiff asks that the same ruling be made on this cause of action as is made on the supplemental appropriation involved in the first cause of action.

On the record before us be find no error of the trial court in sustaining the demurrer to the evidence of the plaintiff on this cause of action, and the order is affirmed.

The tenth cause of action involves .48 mill of the sinking fund of the Tulsa city school district, and is submitted by the plaintiff on the argument with reference to the seventh cause of action herein.

The issues presented are the same as those presented in the seventh cause of action

and the same order is made with reference thereto. The order of the trial court sustaining the demurrer to the evidence offered by the plaintiff is reversed.

This cause is remanded to the trial court, with directions to take such action as is necessary consistent herewith to determine the rights of the parties hereto.

MASON, C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and RILEY, J., absent.