## SCHOOL DISTRICT NO. 58 v. SCHOOL DISTRICT NO. 56.

No. 22510. Oct. 16, 1934.

Brown Moore, for plaintiff in error.

Wilcox & Swank, for defendant in error.

PER CURIAM. This is an appeal from the district court of Payne county, wherein school district No. 56, known as the Perkins district, recovered judgment against school district No. 58, for certain transfer fees for pupils transferred from the latter, hereinafter referred to as the "defendant district," to the former, "plaintiff district." Judgment for plaintiff upon its first cause of action for transfers during the fiscal year 1927-1928 was for $38.90; the second cause of action being dismissed; and upon its third cause of action for transfers during the fiscal year 1929-1930, was for $325.

As to the first cause of action, the record shows that defendant district, at meeting of its board in March, 1927, estimated for transfer purposes during the school year 1927-1928 the sum of $535. The excise board regularly approved such estimate and made appropriations accordingly. The record further shows that the defendant district did not levy a tax for school purposes during the fiscal year, but derived its entire revenue from miscellaneous sources and from a "surplus balance of revenue" from the preceding fiscal year— appearing from the district's financial statement (C.-M. 52) to have been $1,330.53, and appearing from the testimony of the clerk of the school board to have been $1,029 from some mysterious source unknown to him.

Counsel for defendant district contends that its school board could not legally appropriate any part of these sums for the purpose of transferring pupils, since it was not shown to have been derived from a tax levied for this purpose. Plaintiff does not answer this contention, but devotes his brief upon this issue to the question of fact as to whether the evidence supported the court's judgment that the pupils transferred were actually residents of defendant district, which is apparently not denied.

In support of its contention, defendant cites article 10, sec. 19 of the Oklahoma Constitution, which provides that a tax levied for one purpose shall not be devoted to another purpose.

We do not consider this case to involve the above provision of the Constitution for the reason that the record shows that the funds on hand were derived from **surplus revenue** from the previous year, which is distinct and separate from funds raised by levy, as contemplated by the constitutional inhibition, as was recognized in Coggeshall & Co. v. Smiley, 142 Okla. 8, 285 P. 48, as follows:

"Section 9699, Id., provides for the deduction of balance of 'revenue or levy.' It will be noted that it does not provide for the deduction of a balance of 'appropriation.' We think there is a material difference between 'revenue' and 'levy' as so used. Evi-

dently 'revenue' was here used to distinguish receipts from sources other than by levy, as we so hold."

In Protest of Reid et al., 160 Okla. 3, 15 P. (2d) 995, it was also held:

"The term 'revenue' as used in section 12678, O. S. 1931 (section 9699, C. O. S. 1921), means income from sources other than ad valorem taxation, and includes income derived from the sale of a municipally owned electric light and power plant."

Under the authority of section 9699, C. O. S. 1921 (sec. 12678, O. S. 1931), the excise board, in computing the amount of levy for a given fiscal year, must deduct from the total levy:

"The amount of any surplus balance of **revenue or levy,** ascertained to be on hand from the previous fiscal year or years."

From the record in this case, it appears that the appropriation for transfer fees in the sum of $535 was made in contemplation of available funds from "surplus revenue from previous year" and "estimated income —from sources other than tax levy." There is no indication that the appropriation for transfer fees during the fiscal year 1927-1928, was based upon funds derived from a tax levy during the preceding year for some other purpose, and, in fact, the contrary definitely appears from the defendant district's financial statement in the record. Article 10, sec. 19, Oklahoma Constitution, has no application to funds derived from sources other than tax levy. We have carefully reviewed Dickinson v. Blackwood, 76 Okla. 175, 184 P. 582; Wentz v. Commissioners, 147 Okla. 173, 295 P. 599, and Protest of C., R. I. & P. Ry. Co., 146 Okla. 100, 293 P. 539, cited by defendant district's counsel, and find them to involve instances where money has been transferred from a general to a special fund, or vice versa, such as transfer from a general or current expense fund to a library fund, which would be clearly within the constitutional inhibition. Such facts do not appear in this case.

The above decisions and art. 10, sec. 19, Constitution, upon which they are based, prohibit the use of money derived from a tax levy for any purpose other than that distinctly specified, which would clearly prevent money raised by levy for sinking fund purposes from being transferred to the general fund. They do not, however, prevent a transfer from one appropriation to another within the general fund; since the tax is levied for general fund purposes, and application of the proceeds derived therefrom to any appropriation properly chargeable to the general fund is a consistent use.

Section 9699, C. O. S. 1921 (12678, O. S. 1931), is cited in part as follows:

"* * * The several items of the estimate as made and approved by the excise board for each fiscal year shall constitute and are hereby declared to be an appropriation of funds for the several and specific purposes named in such estimate, and the appropriation thus made shall not be used for any other fiscal year or purpose whatsoever. Each clerk or other issuing officer shall open and keep an account with the amount of each item of appropriation showing the purpose for which the same is appropriated and the date, number, and amount of each warrant drawn thereon. No warrant or certificate of indebtedness in any form, shall be issued, approved, signed, attested or registered on or against any appropriation for a purpose other than for which the said appropriation was made, or in excess of the amount thereof."

Under which, it is further contended, unless the surplus balance of revenue carried over from the previous fiscal year was shown to have been raised and appropriated for the purpose of transferring pupils, it could not be considered in making appropriation for such purpose the following year.

The above section, when read in its entirety, cannot conceivably have such meaning. The omitted portion distinctly provides that, after the total appropriations for current expense and sinking fund purposes shall be computed by the excise board, and 10 per cent. added thereto for delinquent taxes, it shall thereupon make levies therefor, **after deducting from the amount so computed the amount of any surplus balance of revenue or levy ascertained to be on hand from the previous year, or years.**

It has been repeatedly held by this court that surplus balances existing in a given fund at the end of a fiscal year constitute an asset of the municipality to be taken into consideration in making levies for the succeeding year. State ex rel. v. Morley, 168 Okla. 259, 34 P. (2d) 258; In re C., R. I. & P. Ry. Co.'s Protest, 142 Okla. 242, 286 P. 316; In re Monsell, 142 Okla. 136, 285 P. 316; Coggeshall & Co. v. Smiley, 142 Okla. 8, 285 P. 48; Protest of Bledsoe, 161 Okla. 227, 17 P. (2d) 979.

The portion of said section relied upon by defendant, as quoted above, refers only to appropriations, in restricting their use to the current fiscal year and to the purpose for which made, and does not operate to limit the foregoing provisions dealing with surplus balance of revenue or levy at the end of a fiscal year.

Appropriations, as defined by our statute (sec. 9702, C. O. S. 1921, 12681, O. S. 1931), are the same as approved estimates, which must be confined to the current year and to their intended purpose, and, at the end of the year, closed out on the books of the municipality. If, however, there may appear at any time thereafter an unincumbered surplus balance in the fund created by revenue or levy to satisfy such appropriations, the said balance must be considered in making levies for such funds to cover estimates or appropriations for the next succeeding fiscal year. It is not contemplated by section 9699 (12678, O. S. 1931), that appropriations be carried over intact into the following year. State ex rel. v. Morley et al., supra.

The judgment of the lower court as to plaintiff district's first cause of action should be affirmed.

As to the third cause of action, upon which the plaintiff district recovered judgment for $325, the record indicates that the school board of defendant district estimated a sum of $1,070 for transfer fees for the fiscal year of 1929-30.

This estimate was by the excise board approved only in a sum of $508.70, which, as pointed out in the brief of defendant in error, was for the purpose of keeping the total school levy within the eight-mill limit upon the district's assessed valuation, as had been voted by its electors at their annual meeting (C.-M. 87).

The appropriation, as reduced by the excise board, fell short of paying the plaintiff district's claim by $325.

Transfer claims by plaintiff and another school district exhausted the appropriation as reduced by the excise board. The lower court, however, gave plaintiff judgment for this amount; which judgment plaintiff seeks to sustain upon the ground that the excise board had no authority to reduce this appropriation from $1,070 to $508.70, the original estimate being sufficient to satisfy plaintiff's claim.

We do not give our unqualified approval to this method of questioning the authority of the excise board in such matters, but no specific objection is made to such method of questioning in this case, and in this instance we will consider the matter as briefed and presented by the parties.

In this case the record shows that the voters increased the levy for the fiscal year 1929-30 by three mills, making a total of eight mills.

The excise board not only had the right, but it was their duty to keep the school district's appropriation within this limit.

In Palmer v. Yale Consolidated School District et al., 115 Okla. 70, 241 P. 495, the entire estimate for transfer fees was eliminated by the excise board in order to bring the annual expenditures within the 15 mill limit prescribed by the Constitution, an increase of ten mills having been voted by the school district. In approving the action of the excise board, this court held:

"The plaintiff in error presents the proposition of school district No. 1 levying a sum in excess of 15 mills for school purposes. Section 9 of article 10 of our Constitution fixes the limitation for school district levies at 15 mills. The levy of 15 mills cannot be exceeded by a school district for school purposes in any year. The school district is controlled by the limitation fixed by the Constitution, and any action of the school district or excise board in excess of the limitation fixed by the Constitution is null and void."

In School District No. 85 v. School District No. 71, Kay County, 135 Okla. 270, 276 P. 186, this court followed the above Palmer Case, with an excellent analysis of its rules for determining the legality of a claim against a school district for transfer fees, as follows:

"This court there held to three basic principles: (1) The school district was not authorized to cause a tax levy to be made in any one year for school purposes in a sum greater than a 15-mill levy, by reason of the restriction contained in section 9, art. 10, Constitution. (2) The right of transfer was dependent upon an estimate made and approved therefor. (3) That school district No. 1 and the excise board were justified 'in the exercise of their judgment' in eliminating the item estimated for transfer fees so as to reduce the estimated needs to 15 mills; and that it was within the exercise of discretion to eliminate wholly the item for transfer fees, rather than to include such item and reduce the other estimated needs."

The sole question arising, therefore, is whether the excise board in the instant case had the legal right to reduce the appropriation for transfers requested by the school board.

The duties of the excise board are prescribed by section 9698, C. O. S. 1921 (12677, O. S. 1931), as follows:

"The excise board shall meet at the county seat on the last Saturday of July, and may adjourn from day to day and time to time thereafter, for the purpose of examining the financial statements for the pre-

vious fiscal year as submitted by the county and the several cities, towns, townships, and school districts, and ascertaining the true fiscal condition of each thereof at the close of such year; and for the further purpose of examining the statements of estimated needs for current expense purposes for the current fiscal year as certified by each of said municipalities, and determining the items and amounts for which appropriations shall be made for such year, detailed as to each officer, board or department. The said board shall have power and authority to revise and correct any estimate certified to them by either striking items therefrom, increasing, or decreasing items thereof, or adding items thereto, when in its opinion the needs of the municipality shall require. All revisions and corrections shall be as to specific items of the estimate and in no event shall any item or items of the estimate for current expense purposes be increased, or any item added thereto, until such proposed increase or additional item shall have been advertised and published by the excise board in some newspaper of general circulation in the county, in one issue, if published in a weekly paper, and two consecutive issues, if published in a daily paper. The cost of any such publication shall be paid by the municipality. When the excise board shall have examined, revised, and adjusted the items of the respective estimates of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary."

From the above section, it clearly appears that the primary duty of the excise board is to keep the annual expenditures of municipalities under their jurisdiction within the limits prescribed by law. Upon it rests the responsibility of keeping each such municipality upon a sound and solvent financial basis.

One of the rules that must be followed by the excise board in its supervision of a school district's expenditures is the limitation in article 10, section 9, of our Constitution, as follows:

"Except as herein otherwise provided, the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year thirty-one and one-half mills on the dollar, to be divided as follows: * * * school district levy, not more than five mills on the dollar for school district purposes, for support of common school: Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

Under this constitutional limitation, the annual school district levy must not exceed five mills, except that the voters thereof may vote to make an increase not in excess of ten mills, or a total of 15 mills.

The same rule would apply to keep the annual appropriations of a school district within a voted limit of eight mills as in cases where the levy may have been increased to the maximum of 15 mills.

It follows that the judgment of the trial court as to the first cause of action should be affirmed; and, as to the third cause of action, should be reversed, with directions to dismiss.

The Supreme Court acknowledges the aid of Attorneys Chas. G. Watts, W. C. Rittenhouse, and J. F. Brett in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Watts, and approved by Mr. Rittenhouse and Mr. Brett, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.