**RYAN, Co. Treas., v. ROACH DRUG CO.**

No. 15719—Opinion Filed July 14, 1925.

Rehearing Denied Sept. 29, 1925.

(Syllabus.)

**1. Municipal Corporations—Charters—Conformity to General Laws—Submission of Budget to Excise Board—Necessity.**

A city organized under a charter form of government must conform to the general laws of the state, and in matters not purely municipal is required to submit its budget to the excise board for the purpose of review, examination, and certification to the proper officers in order that the same may be spread upon the tax rolls.

**2. Same—General Law Controlling.**

Where a city attempts by a charter provision to substitute a system of its own in matters not purely municipal and causes its budget to be spread upon the tax rolls in conflict with the general laws of the state, the law of the latter prevails to the exclusion of the former.

**3. Same—Constitutional Provision.**

Section 2, art. 10, Williams Constitution, providing that the Legislature shall not impose tax for the purpose of any city, county, town or other municipal corporation,

but may by general laws confer on the proper authorities thereof respectively the power to assess and collect such tax, having expressly prescribed the manner by which the Legislature may authorize the assessment and collection of municipal taxes, excludes the assessment and collection of such tax in any other manner than pursuant to the general laws. City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640.

**4. Same—General Statutes on Taxation.**

Cities in this state receive authority to make tax levies by virtue of general laws enacted by the Legislature and not otherwise, and in the absence of legislative authority the city has no power to assess and collect a tax at all. The general law of this state granting to cities the power to levy tax is found in sections 9692, 9699, 9701 to 9712, inclusive, Comp. Stat. 1921, and provisions of charters of cities do not supersede these general laws. The amount of tax authorized to be collected by a municipality and the manner of levying the same, is a matter of general public interest, and can be accomplished only by general laws, and not by charter provisions. Oklahoma News Co. v. Ryan, County Treasurer, 101 Okla. 152, 224 Pac. 969.

**5. Same—Statement to Excise Board—Deductions from Assets.**

A municipality in rendering its financial statement to the excise board of its condition for the previous fiscal year is allowed to deduct from its assets ten per cent. previously added to its estimate for delinquent taxes; however, all taxes thereafter collected including the ten per cent. deducted, or any portion thereof, if collected, must be reported, and if such collection be in excess of the liabilities incurred for the previous fiscal year or years, the same must be deducted from the estimate for the current year.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by the Roach Drug Company against M. S. Ryan, County Treasurer of Oklahoma County. Demurrer by defendant overruled, and he appeals. Affirmed in part and reversed in part.

J. K. Wright, Co. Atty., Lee Gill, Asst. Co. Atty., John Frank Martin, and W. C. Lukenbill for plaintiff in error.

E. E. Blake, B. D. Shear, and Chester L. Evans, for defendant in error.

LESTER, J. The parties will be referred to as they appeared in the court below.

This case presents error from the district court of Oklahoma county. On May 27, 1924, the Roach Drug Company, a corporation, brought suit against M. S. Ryan,

treasurer of Oklahoma county, Okla., to recover certain taxes paid under protest, and which the plaintiff claimed were illegal on the grounds hereinafter stated. The taxes involved were those for the first half of the year 1923, said tax being paid under protest on April 30, 1924. A separate demurrer was filed to each paragraph of the plaintiff's petition; the court overruled the demurrer to each paragraph, and the defendant excepted to the action of the court therein, and elected to stand on the demurrer, and thereafter prosecuted this appeal to reverse the action of the trial court.

There are two principal propositions presented to this court for review: First, Must a city organized under a charter form of government submit its budget to the excise board for the purpose of review, computation, and certification, in order to have the same spread upon the tax rolls, or may the city ignore the excise board and file said budget with the county clerk and thereuuon have said budget spread upon the tax rolls?

The second proposition is, Are cities, counties, and school districts in making up a statement of assets from the previous fiscal year allowed to deduct from taxes in process of collection the ten per cent. of the total appropriation of the previous year reserved for delinquent taxes?

That part of plaintiff's petition which involves the first question is in part as follows:

"Plaintiff alleges that of the tax paid as aforesaid, the sum of $129 so paid by him, as heretofore stated, being the amount produced from the six mill levy for the general or current expense fund of the city of Oklahoma City, state of Oklahoma, for said fiscal year, is illegal and void, for the reason that said levy was not ordered, made, certified and levied by the county excise board, but was ordered, levied and certified and caused to be extended against plaintiff's property by the commissioners of Oklahoma county and is unauthorized, illegal, and excessive, and was unauthorizedly ascertained, charged against and collected from said plaintiff without authority of law."

Possibly no other question has caused so much discussion in governmental affairs as that of taxation. It is necessary that the tax be levied by the government in order to maintain its existence. It is for the protection of its citizens that the scheme of levying a tax be just, uniform, and equitable. Therefore, there is a twofold duty upon the part of the government, one of which is to collect enough tax to meet its reasonable and necessary needs, and the other is to protect the individual from an unjust and unequal burden in sharing in the support of the government. Under our general scheme of government, we have many and varied forms of municipalities, each having its particular financial needs in order that they may properly function, and the Legislature has undertaken to provide the manner in which their financial necessities may be cared for, and at the same time placed thereon limitations to protect its taxpaying citizens from illegal and unlawful tax levies and oppression. No tax levy should be impressed against the property of a citizen unless the same is permitted and authorized by the Constitution and laws of the state. Where property is impressed with a tax levy, such levy constitutes a lien thereon which is superior to every other claim, and therefore every safeguard should be used to protect the property of the citizen from an illegal and unwarranted tax levy. We cannot give approval to the language in the plaintiff in error's brief that "because the defendant did not follow the provisions of the statute in regard to submitting its budget and estimate to the excise board, such failure was a mere technicality and no harm was thereby done." While the Constitution and statutes of the state permit local self-government through its various municipalities, yet the state has not thereby surrendered its interest in its citizens to the extent that it will not protect them against the imposition of an illegal and unwarranted tax against their property.

Article 18, sec. 3a of Williams' Constitution of Oklahoma, is in part as follows, relative to authority granted cities of the first class to form a charter:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state. * * *"

"Consistent" means not contradictory, compliable, accordant. Therefore, by the provisions of the above section of the Constitution. it is provided that a charter may be adopted by a city which is not inconsistent with the Constitution and laws of the state.

We conclude, therefore that where the provisions of the charter of a city are in conflict with the general laws of the state, the same are invalid. The Legislature has no constitutional authority to waive the general laws of the state except in matters of purely municipal concern, which are in conflict with the provisions of a city

charter. The constitutional provision is a clear inhibition against such delegation of power.

The Legislature has never given to any municipality or city governed by a charter the right to compile or compute its budget and file the same with the county clerk, and thereupon have the same spread upon the tax rolls for collection. The Legislature has required that the budget of each and every municipality be submitted to the excise board for review.

Section 9695, Comp. Stat. 1921, provides:

"Each board of county commissioners, the mayor and council of each city or the officers exercising like power in any city having a charter form of government, the board of trustees of each incorporated town, the directors of each township and the board of education of each independent school district shall meet on the first Monday in July of each year, and the directors of each school district shall meet on the second Tuesday in July of each year, and shall respectively make in writing a financial statement showing the true fiscal condition of their respective municipalities as of the close of the previous year and an itemized statement of estimated needs and probable income from sources other than ad valorem tax of each thereof for current expense for the current fiscal year. The financial statement shall be supported by schedules or exhibits showing by classes the amount of all receipts and disbursements and shall be sworn to as being true and correct. * * * Said estimates so made out and published as aforesaid, shall, as soon as completed, be certified to the excise board of the county, together with an affidavit attached, showing the publication or posting thereof, as required by this act. The estimates and statements provided for in section 4 shall also at the same time be transmitted to the excise board."

Section 9698, Comp. Stat. 1921, provides:

"* * * And for the further purpose of examining the statements of estimated needs for current expense purposes for the current fiscal year as certified by each of said municipalities, and determining the items and amounts for which appropriation shall be made for such year, detailed as to each officer, board or department. * * * When the excise board shall have examined, revised and adjusted the items of the respective estimates of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary."

Section 9699, Comp. Stat. 1921, provides:

"When the excise board shall have ascer-

tained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof, and shall have computed the total of the several items of appropriations for current expense and sinking fund purposes for the county and each municipal subdivision thereof with ten per cent. added thereto for delinquent tax, they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy ascertained to be on hand from the previous fiscal year or years. * * * The rates of levy for current expense purposes and sinking fund purposes shall be separately made and stated and the revenue accruing therefrom shall be known as the general fund and sinking fund, respectively; and shall, when so made, be certified to the officer whose duty it is to make up the tax rolls. * * *"

Section 9712, Comp. Stat. 1921, provides:

"* * * And no levy for any purpose shall be valid unless made according to the provisions of this article, and such illegal levy, and the collection of the tax thereunder, may be enjoined at the suit of any taxpayer."

In Cooley on Taxation (3rd Ed.) ch. 1, par. 1, p. 1, it is stated:

"Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs. The state demands and receives them from the subjects of taxation within its jurisdiction that it may be enabled to carry into effect its mandates and perform its manifold functions, and the citizens pays from his property the portion demanded in order that, by means thereof, he may be secured in the enjoyment of the benefits of organized society."

And on page 7 it is stated:

"The power of taxation is an incident of sovereignty, and is possessed by the government without being expressly conferred by the people. It is a legislative power.' Citing United States v. New Orleans, 98 U. S. 381.

In chapter 3, p. 99 Cooley (3rd Ed.) it is said:

"It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other.

"This is a principal which pervades our whole political system, and, when properly understood, admits of no exception. And it is applicable with peculiar force to the case of taxation. The power to tax is a legislative power. The people have created a legislative department for the exercise of the legislative power; and within that power lies the authority to prescribe the rules of taxation and to regulate the manner in which

those rules shall be given effect. The people have not authorized this department to relieve itself of the responsibility by a substitution of other agencies. * * *

"We conceive that the Legislature must in every instance prescribe the rules under which, after due proceedings, the tax gatherer demands the contribution; * * * but to refer the making of the rule to another authority, would be in excess of legislative power."

In the case of City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640, it is said:

"Taxation is the exercise of sovereign authority, and the limitations placed by the Constitution upon the exercise of this sovereign authrority must be construed so as to give effect to the intention, as evidenced by the language of such provisions. While it may be conceded that it was the intention of the framers of the Constitution by authorizing municipalities of over 2,000 inhabitants to adopt a charter to afford such inhabitants the fulllest measure of local self-government consistent with the Constitution and laws of the state, yet it must be borne in mind that such municipalities, in exercising the power of taxation, become involved in a matter under our system of government which is the proper subject of constitutional and general law. This, for the reason that the exercise of the arbitrary power of taxation is subject to the regulation of the supreme sovereign power, which in such case is the state. This is necessary in order that the tax system may be uniform and afford all citizens equal protection of the law.

"It is quite obvious from a fair and full consideration of the various provisions of our Constitution, supra, that it was the evident intention that our system of taxation be one uniform in its operation and effect and that such purpose may only be accomplished by the regulation of the subject by general and uniform laws.

"We therefore conclude that the subjects of taxation, the jurisdiction of the courts, and the regulation of the practice and procedure of the courts of this state are matters of general public concern in which the sovereign, the state, has an interest, and that these subjects are subject to control and regulation by the state by general laws."

In the case of Oklahoma News Co. v. Ryan, 101 Okla. 159, 224 Pac. 969, the court says:

"The numerous authorities cited by the defendant are to the effect that the laws of the state, as used in section 4508 of the Statutes, mean the general laws of the state. That the statutes of the state providing for the assessment and collection of taxes are general laws, and not laws of purely municipal concern, was determined in the case of City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640. We adhere to the views therein expressed, and conclude that the amount of the tax authorized to be levied by a municipality and the manner of levying the same, is a matter of general public interest and can be accomplished only by general laws, and not by charter provisions."

The defendant cites the case of Bodine v. Oklahoma City, 79 Okla. 106, 187 Pac. 209. In that case it appears that the budget was submitted by the city to the excise board, and the excise board, as alleged by the plaintiff therein, was threatening to revise and correct the city budget by either altering, changing, increasing, decreasing, or regulating the items set forth in the budget claimed by the commissioners to be necessary for municipal purposes, and the court held in that case that the excise board had no power or authority to change the budget of said city. This particular proposition is not in point in the instant case, for the reason that the city wholly failed to submit its proposed budget to the excise board for any purpose. The question of the right of the county excise board to change the estimate made by the city and within the current amount permitted by law is not before us in this case.

Defendant insists that the power and authority of the city of Oklahoma City over its tax budget is exclusive and that the county excise board has no jurisdiction or authority whatsoever over the same, and relies on section 10, art. 7, of the city charter of Oklahoma City, which is as follows:

"The various levies provided by this article, and all other taxes and assessments provided in this charter, shall be certified by the city clerk to the county clerk of Oklahoma county, to be by said county clerk placed on the tax rolls for collection subject to the same penalty, and collected by the county treasurer as other taxes are collected by the county treasurer, as is provided by law for the collection of taxes and paid by him to the city treasurer, and such payment shall include all penalties collected on such city taxes and special assessments. The entire amount of all city levies shall be placed upon the tax rolls as one levy to be known as the 'city levy.' "

Here it is seen that the city undertook to substitute a system of its own in lieu of the general system established by the laws of the state. The city attempts to seize upon certain officers of the county and compel them to perform certain duties for the benefit of the city. The city evidently proceeded upon the theory that, as the state had placed like duties upon the same officers, it could likewise appropriate them to its use and benefit, and then proceeded in its charter to fix upon the officers of county clerk and county treasurer certain duties and conferred

upon them certain jurisdiction to act upon matters and things submitted to them by the city.

In the case of Sapulpa v. Land, supra, it is said:

"By section 1, article 7, of the Constitution, the judicial power of the state is vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts and such other courts, commissions or boards as may be established by law. The judicial power here conferred by the Constitution is the power to hear and determine those maters which affect the life, liberty, or property of the citizens of the state as distinguished from ministerial power or authority, and the judicial power vested in the courts to determine such controversy must find the source of its authority in the supreme sovereign, which is the state. The Constitution of this s'ate confides the judicial power to no courts except those organized under the sanction and regulation of state law. This power cannot be delegated to cities, and such municipalities cannot confer any jurisdiction upon such courts in any class of cases. The People, etc., v. Curley, 5 Colo. 412. The court held in this case that the office of police judge for a city or incorporated town was within the legislative authority, and while the election of such officer may be by law conferred upon the municipal authorities, yet such municipal authorities were without authority to provide for the exercise of judicial functions by such police judge in the absence of statutory authority conferring such power upon such municipality. Mr. Justice Stone, in delivering the opinion of the court, used this language:

"'It thus appears to be clearly established that the administration of justice, the preservation of the public peace, and the protection of the rights of the citizens, although confided to local agencies, are essentially matters of public concern, while the enforcement of municipal by-laws and regulations, as above illustrated, are matters which pertain to the municipal corporation, merely, as distinguished from the state at large. * * *'

"The contention that cities operating under a freeholders' charter form of government have the power to determine what are purely municipal affairs, and once having determined through the municipal legislative body legislating within the authority granted by the municipal charter, such matter is binding upon the state, is untenable. The fallacy of this contention is obvious. It is a well-settled principle of law that there can be but one sovereign power in the government of a state. As said by Mr. Justice Timlin in State ex rel. Mueller, v. Thompson 110 Wis. 488, 137 N. W. 20, 43 L. R. A. (N. S.) 339: 'As well might we speak of two centers in a circle as two sovereign powers in a state.'

This is fundamentally contrary to our forms of institutions. Under our national and state organizations a municipal city government is only possible as an administrative agency of the state, having that measure of local self-government granted by the supreme sovereign power, and all local laws of such municipality must be consistent with our fundamental principle of government and always subject to the control of the state. State ex rel. Mueller v Thompson, supra."

The attempt of the city of Oklahoma to prescribe and fix the duties of the county clerk and the county treasurer of Oklahoma county was without constitutional or legislative authority, and the city cannot substitute a system of its own in lieu of the system prescribed by the general laws of the state, and therefore the excise board of the county had exclusive jurisdiction to review the estimate submitted by the city for the purpose of determining whether the items submitted were within the limitation fixed by the statute and such other purposes as prescribed by the general laws of the state.

The second proposition submitted to this court for review occurs by reason of the fact that the board of county commissioners of Oklahoma county, and other municipalities of said county, subtracted from the previous fiscal year ten per cent. from the taxes in process of collection as delinquent taxes, and the second paragraph of plaintiff's petition in relation thereto is as follows:

"Plaintiff further alleges that the sum of $18.92 alleged to be an illegal and excessive tax collected from plaintiff, as aforesaid, by the defendant, arose and is based on the following fact: that the board of county commissioners of said county, in making up its financial statement for the previous year for said county, prepared and submitted the balance sheet of said county for its general or current expense account, as follows:

Exhibit "C."
Assets.

| | | |
|---|---|---|
| Cash on hand, June 30, 1923 | | $17,328.49 |
| Taxes—1922, in process of collection | $463,916.12 | |
| Less 10% reserved for delinquencies | 127,585.23 | |
| Net taxes available | | 336,330.89 |
| Total assets | | $353,659.38 |

Liabilities.

| | | |
|---|---|---|
| Warrants—outstanding June 30, 1923 | | $174,651.77 |
| Reserves: | | |
| For appropriations | $161,208.73 | |
| For interest—accrued and accruing on outstanding warrants | 5,239.55 | |
| Total liabilities and reserves | | 341,100.05 |
| Surplus—Assets over liabilities and reserves | | 12,359.33 |

That said statement did not show the true financial condition of said general or cur-

rent expense fund, because of the deduction under the item of "Less 10 per cent. reserved for delinquencies $127,585.23;" that said deduction was unauthorized by law, and that the true total assets of said fund were, therefore, $481,244.61; that said deduction was unauthorized by law, and the true total surplus assets of said fund were, from 1922-23, therefore, $140,144.56 instead of $12,559.33, as stated, and the tax requirement for the current taxing year ending June 30, 1924, was thereby increased unlawfully, illegally, and excessively; that the county excise board was thereby deceived by said financial statement, and in adopting and using said false and fictitious financial statement did willfully fail to ascertain the true financial condition of said general fund of said county, but used said untrue financial statement and the fiscal condition of said fund of said county, and thus and thereby increased the requirements by taxation of said general fund of said county for the fiscal year ending June 30, 1924, and thereby imposed upon this property owner of said county an illegal and excessive tax of .88 mills on each dollar of plaintiff's equalized and extended valuation, which amounted to $18.82 illegal and excessive taxes, which said sum of $18.82 said defendant so illegally collected, as aforesaid, and this plaintiff paid, under protest, as aforesaid, and now prays recovery thereof.

Section 9699, Comp. Stat. 1921, provides in part as follows:

"When the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof and shall have computed the total of the several items of appropriations for current expense and sinking fund purposes for the county and each municipal subdivision thereof with ten per cent. (10) added thereto for delinquent tax, they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation, provided, that in no event shall the amount of such estimated income exceed the actual collections from such source for the previous fiscal year."

It will be seen that in order to estimate the needs of a municipality for the current year, the financial condition of such municipality for the previous fiscal year must be shown. At the beginning of the previous fiscal year, ten per cent. was added to the estimate for delinquent tax. In our judgment the Legislature foresaw that the entire

amount of taxes and assessments would be impossible of collection, and therefore to prevent a deficit and to insure a margin over losses sustained by reason of the inability to collect all taxes levied, fixed and added thereto the sum of ten per cent. for delinquencies. From long experience it is found that there is a loss to the government between the amount of taxes assessed and levied, and the amount actually collected thereon, and at the end of the fiscal year it is humanly impossible to determine to a mathematical certainty the exact loss that will occur on account of the failure to collect all taxes levied and assessed. The occasion is doubtless rare, if ever, where the government is able to collect one hundred per cent. of the taxes levied. Losses will occur even where the officers are intensely exacting and vigilant. The most efficiently conducted business, when dependent for its existence upon accounts once charged, will suffer loss in failure to collect in full. Therefore, if the ten per cent. for delinquencies had not been added to the estimate, practically every municipality would experience and suffer a deficit. This percentage was fixed at an approximate margin of ten per cent. If the ten per cent. for delinquencies were an asset for each year, and the municipality were compelled to carry forward each year the same as an asset, then the aggregate for several years would reach an amount almost equal to the amount for estimated needs for the current year, and such fictitious value thereby deducted from the estimate would render the income necessary to meet the needs of the municipality wholly inadequate.

It is urged that the term "delinquent" does not mean that the tax is lost to the municipality. This may or may not be true; taxes past due are delinquent; when paid, they become an asset. In the event they are never paid or collected, they constitute a loss. As said, it would be humanly impossible to determine at the end of a fiscal year the exact losses that will be incurred on account of taxes that are impossible of collection. Hence, it is not unreasonable to apply the rule of approximation fixed by the Legislature when it premitted an addition of ten per cent. for delinquencies to be added to the estimate, and thereafter, at the end of the fiscal year, deduct such ten per cent. previously added for delinquent tax. However, it must be borne in mind that such taxes are never commuted or relinquished against the property of the person owing such taxes, and if such taxes are thereafter collected, they are reflected in cash collected, and the taxpaying public receives the

benefit of the delinquent tax when so paid. It is true that no warrants can be drawn against the ten per cent. added for delinquent taxes; this is for the purpose of placing the municipality upon a cash basis and to prevent judgments against such municipality and obviating the necessity of issuing funding bonds thereon. Counsel for plaintiff refers to section 5809, Comp. Stat. 1921, enacted in 1895 by the territorial Legislature, which limits the issuance of warrants to 80 per cent. of the tax levied for that purpose. Section 8635, Comp. Stat. 1921, is a part of chapter 80, Sess. Laws 1910-1911, and provides that "Warrants may be issued to the amount of estimates made and approved by the excise board." Section 8633, Comp. Stat. 1921, is also a part of the same act. It defines "estimate made and approved" and provides warrants issued shall not include the ten per cent. added for delinquent taxes. There is unquestionably a conflict in the limitation placed on the issuance of warrants in section 5809, as compared with section 8635, Comp. Stat. 1921, but in view of the fact that section 5809 is an enactment by the territorial Legislature in 1895, and section 8635 is a part of chapter 80, Sess. Laws 1910-11, and section 11 of said act provides: "All acts or parts of acts in conflict herewith are hereby repealed to the extent of such conflict," in our judgment, section 5809 has been repealed.

In the case at bar, involving the 1923 taxes, the total appropriations for the year were estimated and it was estimated that a certain amount would be received from miscellaneous sources and the balance to meet the appropriation was required to be raised by an ad valorem tax against the property of each taxpayer. Should the contention of the Roach Drug Company be sustained, that company would not pay the full amount of the tax assessed against its property, and the revenue estimated to be received from ad valorem sources will fall short by the amount so cut off and deducted. If these allowances are not too great and too numerous, the ten per cent. for delinquent tax will take care of such losses in revenue, and also the losses by reason of nonpayment of personal tax and on real estate where the county has to bid in and hold the same. The ten per cent. added to the appropriations cannot be spent; it is expressly prohibited by section 8633, supra, and therefore, when set up on the books, performs the office of a valuation account in offsetting taxes that will not be collected, but which remain on the tax rolls in the form of "frozen assets," as they may be termed. Expenditures must be kept within the revenues provided for each year. If the total of the revenues are not collected and warrants to the full amount of the appropriations are issued, it is a mathematical certainty that there will be a deficit in cash with which to redeem the warrants so issued.

We cannot agree with the proposition that surplus balance or revenue on hand be construed to cover and include all uncollected taxes, but in our opinion it means cash or liquid assets on hand. The purpose of a balance sheet is to show the true condition of a business. It will not do this if uncollectible items are carried as assets. The entire amount of all taxes levied by municipalities is never collected; therefore, the balance sheet is to show the true condition. Provision must be made to take care of the uncollected tax; otherwise, a balance sheet will be worthless as reflecting the true financial condition of the municipality.

We are therefore of the opinion that a municipality is warranted in deducting ten per cent. of its original estimates for delinquencies. Of course at the time the financial statement is made relating to the condition of the municipality for the previous fiscal year, if there is on hand any portion of the surplus, including the ten per cent. added for delinquent taxes, the same must be deducted from the estimate for the current year.

The action of the district court in overruling the demurrer of the defendant to paragraph 1 of plaintiff's petition is affirmed, and the action of the court in overruling defendant's demurrer to paragraphs 2, 3, 4, 5, 6, and 7 of plaintiff's petition is reversed, with directions to sustain the same.

NICHOLSON, C. J., and MASON, PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

HARRISON, J., dissents only from that part of the opinion that permits the municipality to deduct ten per cent. from its assets on account of delinquent tax.

Note.—See under (1, 2, 5) 28 Cyc. p. 1701 (1926 Anno). (3) 28 Cyc. p. 1697. (4) 28 Cyc. p. 1658.