**2012 OK 47**

**CITY OF TULSA, a municipal corporation, Plaintiff/Appellee,**

v.

**The STATE of Oklahoma, Defendants/Appellant,**

and

**The State of Oklahoma, ex rel. Oklahoma Tax Commission, Defendant.**

**No. 109,559.**

Supreme Court of Oklahoma.

May 15, 2012.

As Corrected May 29, 2012.

---

Gerald M. Bender, Steven G. Cousparis, Ellen R. Hinchee, Jessica E. Rainey, Attorneys for City of Tulsa, Tulsa, Oklahoma, for Plaintiff/Appellee.

Scott D. Boughton, Nancy A. Zerr, Assistants Attorney General, Oklahoma City, Oklahoma, for Defendant/Appellant.

KAUGER, J:

¶1 In 2010, the Oklahoma Legislature amended the Oklahoma Tax Code, 68 O.S. Supp.2010 § 2702(A)[1] to require municipalities to contract with the State of Oklahoma through the Oklahoma Tax Commission (the Commission) to assess, collect and enforce municipal taxes. On June 1, 2010, prior to the amendment becoming effective on July 1, 2010, the plaintiff/appellee, City of Tulsa (City/Tulsa) contracted with a private company to collect municipal taxes. On August 19, 2010, Tulsa filed a petition for declaratory judgment in the District Court of Oklahoma County to challenge the constitutionality of § 2702(A). The trial court, Honorable Bill Graves, found the statute unconstitutional. The State appealed and we retained the cause on July 22, 2011, and ordered the parties to brief the issues.

¶2 The constitutional questions are consolidated into two, whether: 1) 68 O.S. Supp. 2010 § 2702(A)[2] which requires municipalities to contract with the Commission to assess, collect and enforce municipal taxes unconstitutionally impairs Tulsa's obligation of contracts; and 2) the statutory amendment infringes upon Tulsa's inherent powers granted by the Oklahoma Constitution and its city charter. We hold that requiring the Tax Commission to collect municipal sales and use taxes does not unconstitutionally impair Tulsa's obligation of contracts or infringe its inherent powers granted by the Constitution or the City's charter.

## OKLAHOMA'S EFFORT TO STREAMLINE LOCAL SALES AND USE TAX COLLECTION, PROCEDURAL HISTORY, AND UNDISPUTED FACTS.

¶3 Prior to July 1, 2010, the Oklahoma

---

1. Title 68 O.S. Supp.2010 § 2702(A) provides:

A. The governing body of any incorporated city or town and the Oklahoma Tax Commission shall enter into contractual agreements whereby the Tax Commission shall have authority to assess, to collect and to enforce any taxes or, penalties or interest thereon, levied by such incorporated city or town, and remit the same to such municipality. Said assessment, collection, and enforcement authority shall apply to any taxes, penalty or interest liability existing at the time of contracting. Upon contracting, the Tax Commission shall have all the powers of enforcement in regard to such taxes, penalties and interest as are granted to or vested in the contracting municipality. Such agreement shall provide for the assessment, collection, enforcement, and prosecution of such municipal tax, penalties and interest, in the same manner as and in accordance with the administration, collection, enforcement, and prosecution by the Tax Commission of any similar state tax except as provided by agreement. Such agreement shall authorize the Tax Commission to retain an amount not to exceed

one and three-fourths percent (1 3/4%) as a retention fee of municipal tax collected for services rendered in connection with such collections; provided, if a municipality files an action resulting in collection of delinquent state and municipal taxes, the Tax Commission shall remit one-half (1/2) of the retention fee applied to the amount of such taxes to the municipality to be apportioned as are other sales tax revenue. All funds retained by the Tax Commission for the collection services to municipalities shall be deposited in the Oklahoma Tax Commission Revolving Fund in the State Treasury. The municipality shall agree to refrain from any assessment, collection, or enforcement of the municipal tax except as specified in an agreement made pursuant to subsections A, C, D and E of this section. This statute was amended in 2010, which is the version at issue in this cause and again in 2011. However, the relevant portions of the 2011 amendment remain substantially unchanged.

2. Title 68 O.S. Supp.2010 § 2702(A), see note 1, supra.

Tax Code, 68 O.S. Supp.2002 § 2702(A)[3] authorized municipalities such as Tulsa to contract with the Tax Commission to collect and enforce Tulsa's municipal taxes. The Commission was also authorized to collect up to 1 and 3/4% of the funds it collected as a service fee.

¶4 Tulsa admits that, historically, it has voluntarily chosen to contract with the Commission for such services and that such contracts were terminable by either party upon proper notice as specified in the contract. In fact, it contracted with the Commission for a service fee of 1% of the municipal sales and use taxes, interest, and penalties it collected for Tulsa until May of 2010.[4]

¶5 The backdrop to this dispute is found throughout the Oklahoma Tax Code.[5] The Commission has long been authorized to enter into agreements with cities, town, and municipalities (collectively municipalities) to collect and administer local sales and use taxes for a fee on behalf of the municipalities.[6] However, it was not until the 2000 legislative session, that the Oklahoma Legislature, along with other states, began actively modernizing and streamlining municipal tax collections.

¶6 In 2000, the Oklahoma Legislature adopted the Streamlined Sales Tax System Act (the 2000 Act)[7] in response to Legislative findings that:

1) state and local tax transactions should be treated competitively and neutral;

2) sales and use tax systems should be simplified;

3) revenue sources and fiscal sovereignty should be preserved; and

4) the administrative burden of collection should be reduced.[8]

The purpose of the Act was to direct the Commission to work with other states in developing and participating in a streamlined system for sales tax and use tax collection and administration.[9]

---

3. Title 68 O.S. Supp.2002 § 2702(A), see note 1, supra,

4. The most recent agreements that the City and the Commission were operating under were initially entered into on January 17, 2007, which were renewable without action of either party for 1 year increments provided that the current tax rate remained unchanged and neither party had notice to terminate the agreement. One agreement was for collection of the municipal use tax and the other was for collection of the municipal sales tax.

5. Title 68 of the Oklahoma Statutes is known as the Oklahoma Tax Code. Title 68 O.S.2001 § 101 provides:

The several tax laws recodified as Tax Codes, together with this act, shall be known as the Oklahoma Tax Code.

6. For instance, the statute at issue here, 68 O.S. Supp.2010 § 2702 was originally enacted in 1965 and the original version, 68 O.S. Supp.1965 § 2702 provided:

The governing body of any incorporated city or town and the Oklahoma Tax Commission is authorized and empowered to enter into contractual agreements whereby the Oklahoma Tax Commission shall have authority to collect any of the taxes assessed by such incorporated city or town, and remit the same to such municipality. Such agreement may also provide for an agreed amount to be allowed the Oklahoma Tax Commission for services rendered in connection with such collections.

7. Title 68 O.S. Supp.2000 §§ 1354.7–.13. § 1354.7 provides:

This act shall be known and may be cited as the 'Streamlined Sales Tax System Act.'
The Act became effective July 1, 2000.

8. Title 68 O.S. Supp.2000 § 1354.8 provides:

The Legislature finds that:
1. State and local tax systems should treat transactions in a competitively neutral manner;
2. A simplified sales and use tax system that treats all transactions in a competitively neutral manner will strengthen and preserve the sales and use tax as vital state and local revenue sources and preserve state fiscal sovereignty;
3. Remote sellers should not receive preferential tax treatment at the expense of local "Main Street" merchants, nor should such vendors be burdened with special, discriminatory or multiple taxes;
4. The state should simplify sales and use taxes to reduce the administrative burden of collection; and
5. While states have the sovereign right to set their own tax policies, states working together have the opportunity to develop a more simple, uniform and fair system of state sales and use taxation without federal government mandates or interference.

9. Title 68 O.S. Supp.2000 § 1354.9–.10. The Tax Commission was given until March 1, 2001, to report its findings. Title 68 O.S. Supp.2000 § 1354.13. See also, 2009 OK AG 39 ¶¶ 8–9.

¶ 7 The next year, in 2001, the Legislature, in an apparent response to the Commission's work, adopted the Streamlined Sales and Use Tax Administration Act, which applied to state, county or municipality sales and use tax collection.[10] The purpose of the 2001 Act was to simplify and streamline sales and use tax collections and reduce and eliminate the burden and costs of collecting taxes for both the state and its political subdivisions.[11]

¶ 8 As part of the simplification process, the Legislature authorized the State to work with other states and enter into agreements simplifying and modernizing sales and use tax administration to substantially reduce a taxpayer's burden of tax compliance.[12] The agreements reduced the burdens of complying with local sales and use taxes by requiring states to administer sales and use taxes levied by local jurisdictions.[13]

¶ 9 Some nine years later, the legislature expanded its streamlining efforts during the 2010 Legislative session,[14] when it passed House Bill 2359 which amended § 2702(A) to require municipalities to contract with the Commission for collection of municipal taxes and set the required collection fee at 1 and 3/4% of what was collected.[15] On June 1, 2010, Tulsa entered into an agreement with RDS, a private company who specializes in the collection and recovery of taxes for cities in various states. On June 9, 2010, the 2010 legislative amendment to § 2702 was signed by the Governor to become effective July 1, 2010.

¶ 10 On June 30, 2010, Tulsa amended its contract with RDS, making some minor adjustments to their arrangement. The next day, the statutory mandates of § 2702 became effective. On August 19, 2010, Tulsa filed a petition for declaratory judgment in Oklahoma County District Court, seeking to have § 2702 declared unconstitutional.[16] It

10. Title 68 O.S.2001 §§ 1354.14–.23. The Act defines "Sales tax" as taxes levied by the state county or other entity under Section 1350 et seq. of the Tax Code and municipalities under section 2701 of the Tax Code. "Use tax" is also defined as a tax levied by the state, county or municipality. Title 68 O.S.2001 § 1354.15. The 2001 Act was amended in 2003.

11. Title 68 O.S.2001 § 1354.16 provides:
The Legislature finds that a simplified sales and use tax system will reduce and, over time, eliminate the burden and cost for all vendors to collect sales and use taxes levied by this state and its political subdivisions. The Legislature further finds that this state should participate in multistate discussions to review or amend the terms of the Agreement to simplify and modernize sales and use tax administration in order to substantially reduce the burden of tax compliance for all sellers and for all types of commerce.
The statute was amended in 2003 to use the word "streamlined" instead of "simplified."

12. Title 68 O.S.2001 § 1354.18.

13. Title 68 O.S.2001 § 1354.20(5) provides:
5. Local Sales and Use Taxes. The Agreement must provide for reduction of the burdens of complying with local sales and use taxes through the following:
a. restricting variances between the state and local tax bases,
b. requiring states to administer any sales and use taxes levied by local jurisdictions within the state so that sellers collecting and remitting these taxes will not have to register or file returns with, remit funds to, or be subject to

independent audits from local taxing jurisdictions,
c. restricting the frequency of changes in the local sales and use tax rates and setting effective dates for the application of local jurisdictional boundary changes to local sales and use taxes, and
d. providing notice of changes in local sales and use tax rates and of changes in the boundaries of local taxing jurisdictions;

14. Tulsa mistakenly argues that the State, improperly interjected additional facts by discussion of the history of Streamlined Sales and Use Tax Agreements into the appellate briefs. This argument is unconvincing because most, if not all, of the information provided by the State can be gleaned from the statutory language expressed in both the 2000 and 2001 enactments. This information is the law and it is relevant to the extent it provides a historical backdrop to the State's involvement in local tax collections. Nothing precluded the trial court from considering these laws which were in effect when the cause was filed and nothing precludes their consideration today.

15. Title 68 O.S. Supp.2010 § 2702(A), see note 1, supra.

16. The City brought the proceeding pursuant to 12 O.S.2001 § 1651 *et. seq.* Section 1651 provides:
District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any

objected to two sections of the statute, § A, which required municipalities to contract with the commission,[17] and, § D, which concerned auditing efforts of municipalities, based upon the premise that they were required to contract with the Commission.[18]

¶ 11 Tulsa argued that the statute was unconstitutional because it: 1) impaired its obligation of contracts; 2) limited its power to assess and collect its own taxes; 3) limited its ability to maximize its tax revenue; and 4) abrogated or limited City powers which were reserved in its city charter. Both the State and the City filed Motions for Summary Judgment. The trial court, on May 9, 2011, in a twenty-two page order determined the statute to be unconstitutional and it granted Tulsa's motion for summary judgment and denied the State's motion.[19]

¶ 12 The Commission appealed to this Court on June 9, 2011, and requested that we retain the cause rather than assign it to the Court of Civil Appeals. The motion to retain was granted on July 22, 2011, and additional briefs were ordered. The briefing cycle was completed on August 29, 2011.

## ¶ 13 REQUIRING THE COMMISSION TO COLLECT MUNICIPAL SALES AND USE TAXES DOES NOT UNCONSTITUTIONALLY IMPAIR TULSA'S OBLIGATION OF CONTRACTS.

■ ¶ 14 The Oklahoma Constitution, art. 2, § 15 provides:

No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties.

---

foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

17. Title 68 O.S. Supp.2010 § 2702(A), see note 1, supra.

18. Title 68 O.S. Supp.2010 § 2702(D) provides:
D. Provided further that, upon the request of any incorporated city or town, the Oklahoma Tax Commission shall enter into contractual agreements with such municipality whereby the municipality would be authorized to implement or augment the enforcement, either directly or through contract with private auditors or audit firms, of the municipal tax. Any person performing an audit shall first be approved by the Oklahoma Tax Commission and, once approved, shall be appointed as an agent of the Oklahoma Tax Commission for purposes of the audit. Contracts with a private auditor or audit firm shall not be subject to the limitations of Section 262 of this title and shall and

are hereby authorized to provide that the municipality, private auditors or audit firms and the Oklahoma Tax Commission may exchange necessary information to effectively carry out the terms of such agreements. The municipality, its officers and employees and private auditors or audit firms may receive all information necessary to perform audits and shall preserve the confidentiality of such information in the same manner and be subject to the same penalties as provided by Section 205 of this title. Municipalities conducting audits directly or by contracting for private auditors or audit firms pursuant to this subsection shall furnish to the Oklahoma Tax Commission the audit results and all relevant supporting documentation. Further, such municipalities shall provide for the payment of private auditors or audit firms by deduction from the tax assessment resulting from the audit conducted by said private auditors or audit firms unless a municipality contracts with the auditor or audit firm for another method of payment. Any municipal sales tax funds recovered as a result of the services provided under this subsection will not be included in calculating the retention fee retained by the Oklahoma Tax Commission pursuant to subsection A of this section. The contracts authorized by subsection A of this section shall provide that the Oklahoma Tax Commission shall not have any obligations thereunder to any municipality that does not participate in an audit conducted under this subsection.

19. On May 18, 2011, the trial court filed an amendment to its May 9, 2011, order making a small correction, but leaving the entire order substantially intact.

This provision also has a federal counterpart.[20] Tulsa argues that the 2010 amendment requiring the Commission to collect Tulsa's sales and use taxes impairs its obligation of contracts—specifically, the contract it entered into with the private vendor, RDS, on June 1, 2010, before the amendment's effective date. The Commission counters that contractual obligations may constitutionally be impaired even if the impairment is substantial when a significant and legitimate public purpose is being served by the State and the impairment is reasonable and necessary.

¶ 15 In *Edmondson v. Pearce*, 2004 OK 23, 91 P.3d 605, *cert. denied by Tally v. Edmondson*, 543 U.S. 987, 125 S.Ct. 495, 160 L.Ed.2d 371 (2004) we thoroughly examined the constitutional prohibition against the impairment of the obligation of contracts. *Edmondson* involved the constitutionality of a statute which outlawed cockfighting. It was alleged that private contracts to sell birds to be used for cockfighting could not legally be performed if the statute were upheld.

■ ¶ 16 We recognized that the prohibition against impairing the obligation of contracts was not absolute because the constitutional provision does not operate to obliterate the police power of the state.[21] When a state law has been alleged to fail to pass constitutional muster under the Contract Clause in regard to a contract between private parties, a three-part test is employed: 1) whether the law has, in fact, operated as a substantial impairment of a contractual relationship; 2) if so, whether the law serves a legitimate public purpose such as remedying a broad and general social or economic problem; and 3) if so, whether the adjustment of the rights and responsibilities of the contracting parties is based on reasonable conditions and is of a character appropriate to the public purpose behind the law's adoption.[22]

■ ¶ 17 The public purpose requirement guarantees that the State is exercising its police power rather than providing a benefit to a special interest.[23] When the State itself is not a contracting party to the contract which is alleged to have been impaired, we defer to legislative judgment as to the need and reasonableness of any specific law.[24]

---

**20.** This Constitutional provision parallels the United States Constitution, art. I, § 10 which provides in pertinent part:

... No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility....

We explained in *Edmondson v. Pearce*, 2004 OK 23, ¶¶ 26–28, 91 P.3d 605, *cert. denied by Tally v. Edmondson*, 543 U.S. 987, 125 S.Ct. 495, 160 L.Ed.2d 371 (2004) after a lengthy discussion of the federal Constitutional provision that the federal Contract Clause was primarily focused on legislation designed to adjust pre-existing debtor-creditor relations.

**21.** *Edmondson v. Pearce*, see note 20, supra. Although facially absolute, its prohibition must be accommodated to the inherent police power of the state to safeguard the vital interests of the people. The clause does not prevent the State from exercising its powers even though previously entered contracts between individuals will be impaired or perhaps destroyed. *Edmondson*, supra at ¶ 27, citing *Keystone Bituminous Coal Association v. DeBenedictis*, 480 U.S. 470, 502, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Energy Re-*

serves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983); *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241–42, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

**22.** *Edmondson v. Pearce*, see note 20, supra at ¶ 29. *See also, Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, note 21, supra; *Allied Structural Steel Co. v. Spannaus*, note 21, supra; *United States Trust Co. v. New Jersey*, note 21, supra.

**23.** *Edmondson v. Pearce*, see note 20, supra at ¶ 29. *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, note 21, supra.

**24.** *Edmondson v. Pearce*, see note 20, supra at ¶ 29. *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, see note 21, supra; *United States Trust Co. v. New Jersey*, see note 21, supra. In other words, when the State itself enters into a contract, it cannot simply walk away from its financial obligations by enacting a statute to impair the obligations of the contract. *See discussion, Energy*, supra at fn. 14. *United States Trust Co. v. New Jersey*, see note 21, supra. This is clearly not the case in this cause.

¶ 18 Clearly, the contract between Tulsa and RDS is substantially impaired by the legislative change because it will no longer be subject to legal performance without running afoul of the Act. However, such an impairment does not necessarily constitute a violation of the Contract Clause. It is also unquestionable that the Legislature was acting in the furtherance of a legitimate police power.

¶ 19 The power to collect taxes, whether collected by the state or its subdivisions is inherent and is a necessary attribute of sovereignty. Without the power of taxation and its collection, necessary public services would be non-existent. The broad and general purpose being served is stated with the Act itself—to simplify and streamline sales and use tax collections and reduce and eliminate the burden and costs of collecting taxes for both the state and its political subdivisions.

¶ 20 Historically, Tulsa had always contracted with the Tax Commission to provide such services. Given the deference to which the legislative judgment is entitled as to the need and reasonableness of this measure, there appears no deficiency in terms of the Act being an appropriate character to carry out or implement the purpose behind it. What better way exists to ensure that the burden and costs of collecting taxes for both the state and its political subdivisions be simplified, streamlined and reduced?

¶ 21 Nevertheless, summary judgment was granted in favor of the City declaring the statute unconstitutional. The City argues that: 1) the State has not made any connection or showing that the stated legislative purpose of the Act would actually be simplified, streamlined, and the burden and costs reduced by the State's collection rather than the City's; 2) there is no evidence that businesses or the City is more or less burdened or that the economy will suffer or thrive if the City were allowed to collect their own taxes; 3) nothing shows how the State's collection would be more uniform than if the City collected their own taxes; and 4) the State benefits financially from having a mo-

nopoly on municipal tax collection and has no incentive to charge anything less than the statutory cap of 1 3/4%.

¶ 22 The burden is not on the State to answer the City's concerns. Rather, the burden is on the City to make such showings to overcome the presumption of constitutionality. In *Lafalier v. Lead–Impacted Communities Relocation Assistance Trust*, 2010 OK 48, ¶ 15, 237 P.3d 181, we clearly expressed:

> Even though the moving party must show that there is no dispute of fact and that they are entitled to judgment as a matter of law, there is a presumption that every statute is constitutional. The party seeking a statute's invalidation as unconstitutional has the burden to show the statute is clearly, palpably, and plainly inconsistent with the Constitution. We scrutinize a constitutional attack on a statute with great caution and grave responsibility. (Citations omitted.)

Requiring the Commission to collect municipal sales and use taxes does not unconstitutionally impair Tulsa's obligation of contracts.

### TULSA'S CONSTITUTION AND CHARTER POWER IS NOT INFRINGED.

■ ¶ 23 The City argues that 68 O.S. Supp.2010 § 2702(A)[25] unconstitutionally infringes upon the inherent powers as granted by the City's charter and the Oklahoma Constitution. In other words, the State overstepped its constitutional boundaries by interfering with the City's taxation power and revenue stream. It also insists that whenever a conflict exists between general state law and a city charter, the charter must prevail. The State contends that: 1) neither the City's ability to assess and receive sales and use tax nor its charter are infringed; and 2) even if a conflict existed, the charter must yield to wider public interest in uniform tax collection.

¶ 24 Tulsa is a municipal corporation organized under the Oklahoma Constitution art. 18, §§ 1–2.[26] It is also a chartered city

---

**25.** Title 68 O.S. Supp.2010 § 2702(A), see note 1, supra.

**26.** The Okla. Const. art. 18, § 1 provides:
Municipal corporations shall not be created by special laws, but the Legislature, by general

under a commission form of government with duly organized legislative and executive departments.[27] Tulsa, pursuant to the Oklahoma Constitution art. 10, § 20,[28] and the Tax Code, 68 O.S. Supp.2007 §§ 2701 et seq. has the legal authority to assess and collect municipal taxes for public purposes.[29] Tulsa has adopted its own sales and use tax code for the purpose of assessing and collecting municipal taxes.[30] Tulsa is also generally allowed to make contracts necessary to carry out its municipal affairs.[31]

laws shall provide for the incorporation and organization of cities and towns and the classification of same in proportion to population, subject to the provisions of this article.
Section 2 provides:
Every municipal corporation now existing within this State shall continue with all of its present rights and powers until otherwise provided by law, and shall always have the additional rights and powers conferred by the Constitution.

27. The authority to adopt a charter form of government is provided in section 3a, art. 18 of the Oklahoma Constitution. *Bodine v. Oklahoma City*, 1919 OK 368, ¶ 5, 79 Okla. 106, 187 P. 209. The Okla. Const. art. 18, § 3(a) provides:
Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, by causing a board of freeholders, composed of two from each ward, who shall be qualified electors of said city, to be elected by the qualified electors of said city, at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board or a majority of them, and returned, one copy of said charter to the chief executive officer of such city, and the other to the Register of Deeds of the county in which said city shall be situated. Such proposed charter shall then be published in one or more newspapers published and of general circulation within said city, for at least twenty-one days, if in a daily paper, or in three consecutive issues, if in a weekly paper, and the first publication shall be made within twenty days after the completion of the charter; and within thirty days, and not earlier than twenty days after such publication, it shall be submitted to the qualified electors of said city at a general or special election, and if a majority of such qualified electors voting thereon shall ratify the same, it shall thereafter be submitted to the Governor for his approval, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this State. Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. A copy of such charter, certified by the chief executive officer, and authenticated by the seal of such city, setting forth the submission of such charter to the electors and its ratification by them shall, after the approval of such charter by the Governor, be made in duplicate and deposited, one in the office of the Secretary of State, and the other, after being recorded in the office of said Register of Deeds, shall be deposited in the archives of the city; and thereafter all courts shall take judicial notice of said charter. The charter so ratified may be amended by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof (or by petition as hereinafter provided) at a general or special election, and ratified by a majority of the qualified electors voting thereon, and approved by the Governor as herein provided for the approval of the charter.

28. The Okla. Const. art. 10, § 20 provides:
The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes.

29. Title 68 O.S. Supp.2007 §§ 2701 et seq. Section 2701 provides in pertinent part:
A. Any incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government, subject to the provisions of subsection F of this section, except ad valorem property taxes. Provided:

30. The City's tax code can be found at Titles 43 and 45 of the Tulsa Revises Ordinances. Tulsa's city charter art. 1, pg. 2 § 3D provides the City the power to "levy, assess, and collect taxes."

31. Title 11 O.S.2011 § 22–101 provides:
All incorporated municipalities shall be bodies corporate and politic, and shall have the powers to:
1. Sue and be sued;
2. Purchase and hold real and personal property for the use of the municipality;
3. Sell and convey any real or personal property owned by the municipality and make orders respecting the same as may be conducive to the best interests of the municipality;
4. Make all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to the good government of the municipality, and to the exercise of its corporate and administrative powers; and
5. Exercise such other powers as are or may be conferred by law.

¶ 25 The conflict between a city's and the State's taxing authority has long existed.[32] Initially, it seemed, a city could, with limitations, provide in its charter for the assessment, levy, and collection of taxes in a manner other than provided by the general laws of the state. For example, in *City of Collinsville v. Ward,* 1917 OK 151, 64 Okla. 30, 165 P. 1145, *overruled in part by Bodine v. Oklahoma City,* 1919 OK 368, 79 Okla. 106, 187 P. 209, in addressing a city's taxing authority, the Court held that the power of taxation provided in a city's freeholders' charter, framed and adopted in accordance with the Constitution and state law, superseded the general revenue laws of the state in conflict in so far as the taxation involved "purely" municipal matters.[33] The Court did not define "purely" municipal.

¶ 26 Two years later, *Ward,* supra, was modified in so far as the City's tax purview being limited to "purely" municipal purposes in *Bodine v. Oklahoma City,* 1919 OK 368, 79 Okla. 106, 187 P. 209. In *Bodine,* the Legislature created a county excise board and when the City of Oklahoma City submitted its budget to the county board, the board tried to revise and correct the budget. The Court held that the city's power to assess and collect taxes is implied in its charter and the charter terms usurped the Legislature's general laws. The power of revision and correction of the city's tax budget lie with the mayor and city commissioners pursuant to the city's charter and not with the county excise board.

¶ 27 *Bodine* also recognized that: 1) a city charter may provide for the assessment, levy, and collection of a tax independent of the instrumentalities provided by the general laws of the state; and 2) a city had an inherent power to impose taxes for all necessary municipal purposes to function and that power is not limited to purposes which are "purely" municipal, expressly overruling *Ward* to the extent it conflicted with *Bodine*'s holding. While *Bodine* touches on a city's power and authority to impose and collect municipal taxes, it is not totally dispositive of this cause because it did not squarely address the Legislature's authority to mandate a particular method of municipal tax collection and at what cost, if any, to a municipality.

¶ 28 In other cases, the Court recognized that while the Legislature delegates taxing authority to municipalities, it is Constitutionally prohibited from directly assessing municipal taxes itself.[34] Nor may it do indirectly that which cannot be done directly.[35] In still others, the Court addressed this delegation when a city operating under a freeholders' charter attempted to provide a method of enforcement of the collection of municipal

**32.** *See generally,* Power of City Under Freeholder's Charter, 35 A.L.R. 883 (Originally published in 1925).

**33.** In *Rogers v. Bass & Harbour Co.,* 1917 OK 482, 64 Okla. 321, 168 P. 212, *overruled in part by Bodine v. Oklahoma City,* 1919 OK 368, 79 Okla. 106, 187 P. 209 the holding in *City of Collinsville v. Ward,* 1917 OK 151, 64 Okla. 30, 165 P. 1145, *overruled in part by Bodine v. Oklahoma City,* 1919 OK 368, 79 Okla. 106, 187 P. 209, appeared to be expanded because *Ward* was also applied when type of city's charter was not revealed.

**34.** The Okla. Const. art. 10, § 20, see note 28, supra. In *Board of Com'rs of Grady County et al. v. Hammerly,* 1921 OK 356, ¶ 29, 85 Okla. 53, 204 P. 445, the Court, addressing the constitutionality of an Act relating to Sheriff sales, stated:

The framers of our Constitution, recognizing the rights of free government and that the rights of personal liberty and private property should be held sacred and that such govern-

ment would not be free if the rights of property were left solely dependent upon the legislative body without any restraint, solemnly declared that taxes should not be levied or collected except by general laws and for public purposes only, and that the Legislature should not have the power to impose taxes for the purpose of any county, city, town, or other municipal corporation, but that should be done by the proper authorities of such counties, cities, towns, or other municipalities, respectively, under a general law of the state, and that the power of the levying and collection of such taxes should be delegated to the proper authorities of the respective counties and municipalities. State constitutions are restrictions upon legislative power rather than a grant of such power, and when it declares how a right or duty may be exercised, the Legislature is without power to provide its exercise in some other way.

**35.** *City of Ardmore v. Excise Board of Carter County,* 1932 OK 48, ¶ 12, 155 Okla. 126, 8 P.2d 2.

taxes contrary to the Legislature's general statutes.

¶ 29 For example, in *City of Sapulpa v. Land*, 1924 OK 92, 101 Okla. 22, 223 P. 640, the City's charter provided that the board of commissioners may, by ordinance, provide a system for assessment, levy and collection of all municipal taxes. The board did so by adopting a city ordinance authorizing the district or superior courts to foreclose city ad valorem tax liens. The City of Sapulpa, just as Tulsa does in the present cause, relied upon the line of cases such as *Bodine*, supra and *Ward*, supra, which recognized that provisions of a city's charter become the organic law of the municipality and supersede the laws of the state which conflict with it.

¶ 30 The *Sapulpa* Court disagreed. Reviewing a multitude of constitutional provisions,[36] stating in ¶¶ 20–22:

> Upon a careful consideration of the provisions of section 3A, art. 18, of the Constitution, supra, it is manifest that it was the intention of the framers of the Constitution that all charter provisions must be subject to the general laws of the state, and by constitutional provisions, supra, no special laws shall be enacted where a general law may be made applicable. It is quite evident it was never the intention of the framers of the Constitution for municipal charter provisions, as authorized, to prevail over any general law of the state when its operation must be applicable to citizens alike throughout the state and all citizens are entitled to its protection.

> Taxation is the exercise of sovereign authority, and the limitations placed by the Constitution upon the exercise of this sovereign authority must be construed so as to give effect to the intention, as evidenced by the language of such provisions. While it may be conceded that it was the intention of the framers of the Constitution by authorizing municipalities of over 2,000 inhabitants to adopt a charter to afford such inhabitants the fullest measure of local self-government consistent with the Constitution and laws of the state, yet it must be borne in mind that such municipalities, in exercising the power of taxation, become involved in a matter under our system of government which is the proper subject of constitutional and general law. This, for the reason that the exercise of the arbitrary power of taxation is subject to the regulation of the supreme sovereign power, which in such case is the state. This is necessary in order that the tax system may be uniform and afford all citizens equal protection of the law.

> It is quite obvious from a fair and full consideration of the various provisions of our Constitution, supra, that it was the evident intention that our system of taxation be one uniform in its operation and effect and that such purpose may only be accomplished by the regulation of the subject by general and uniform laws.

¶ 31 The Court in Sapulpa also noted that:

1) under the expressed provisions of the Constitution must be collected pursuant to general laws and this method excludes every other;

2) taxes in this state must be assessed and collected pursuant to and under the authority of general laws enacted by the Legislature;

3) under our form of government, there can be no absolute self-governing American cities, no matter how limited as to subject, otherwise, an impossible sovereign within a sovereign would exist;

4) municipal corporations are bodies political and corporate created by the Legislature as governmental agencies of the state and they can only exercise such power as they derive from their source of creation;

5) the powers which municipalities exercise are at all times subject to legislative control and the state has power to determine what matters are of general public concern; and

---

**36.** The Court in *City of Sapulpa v. Land*, 1924 OK 92, ¶¶ 11–19, 101 Okla. 22, 223 P. 640 reviewed constitutional provisions concerning uniform taxation, assessment for local improvements, levying taxes for public purpose only, taxation for municipal purposes, extension of authority, uniformity of laws, judicial power and jurisdiction. The Okla. Const. art. 10, §§ 5, 7, 14, 20, art. 5, §§ 36, 59, art. 7, §§ 1, 10, and art. 5, § 46, respectively.

6) the exercise of its power of a municipal government must be consistent with the organic law of the state and subject to the supreme powers of the Legislature.

¶ 32 Similarly, in *Ryan v. Roach Drug Co.*, 1925 OK 611, 113 Okla. 130, 239 P. 912, a case in which a city attempted by charter provision to substitute its own system of budget approval contrary to the statutory system, the Court clearly stated that cities in this state receive authority to make tax levies by virtue of general laws enacted by the Legislature and not otherwise, and in the absence of legislative authority the city has no power to assess or collect a tax at all.

¶ 33 While nothing in the aforementioned decisions is dispositive of this cause, from all of those decisions the Court can conclude that: 1) municipalities through their charters may provide for municipal taxation and collection; 2) the Legislature through general laws of the state may provide for a uniform tax collection system; 3) the Legislature has the authority to determine that matters such as streamlining sales and use tax collection to reduce and eliminate the burden of costs of collecting taxes for both the state and its political subdivision are of public concern; and 4) the city's charter, to the extent it conflicts with the Legislature's streamlining scheme must yield in favor of the supreme powers of the Legislature.

¶ 34 The Supreme Court of Utah in *Merkley v. State Tax Commission*, 11 Utah 2d 336, 358 P.2d 991 (1961), reached a similar result when it reviewed a state statute that: 1) granted municipalities and counties the authority to levy sales and use taxes; and 2) mandated that the municipalities contract with the state tax commission to administer and operate its collection and distribution. The statute was challenged under various articles of Utah's Constitution including the prohibition of legislative delegation; the prohibition of the legislature levying municipal taxes; unlawful interference with the tax commission and local governmental agencies; prohibition of special laws; and that it was unreasonable, arbitrary, vague, and ambiguous.

¶ 35 The Utah Supreme Court upheld the statute noting that:

1) it was obvious that no legislative authority over cities was granted to counties nor delegated to the tax commission;

2) both cities and counties benefitted from the statute;

3) the tax commission was given no power over any county or city, but instead was burdened with a duty to collect the taxes for them, if levied, for an apparent modest fee; and

4) to require local governmental agencies to collect its own tax, would be duplication leading to a more expensive and quite impractical situation.

This rationale is very persuasive and appears equally applicable to the facts of this cause.[37] We hold that Tulsa's constitutional and charter authority is not unconstitutionally infringed by the legislation.

¶ 36 The only remaining concern, if any, would be the "apparent modest fee." Here, the Legislative mandate includes a statutory mandated fee capped at 1 3/4% of the collection. Tulsa does not contend that this nominal fee is unrelated to the costs of collection or that it is an attempt by the State to do indirectly what it cannot do directly—impose

---

**37.** In *Thurston v. Caldwell*, 1913 OK 714, 40 Okla. 206, 137 P. 683, the Court upheld as constitutional the Legislature's empowerment of a county clerk to collect taxes for a charter city. In contrast, Tulsa relies on a Washington state case, *State ex.rel Tax Commission v. Redd*, 166 Wash. 132, 6 P.2d 619 (1932) which references prior decisions from the State of Kentucky. [Our Court acknowledged in *Redd* that our constitutional provision art. 10 § 20 was directly taken from the Kentucky constitution.] *Redd* involved the state tax commission acting under a state statute attempting to reassess local county assessor's real property assessments. The court held

the statute unconstitutional as an attempt by the Legislature to encroach on the Cities' right of self governance. While we could apply this rationale here as persuasive, it seems to be contrary to the Court's language and rationale in *City of Sapulpa v. Land*, 1924 OK 92, 101 Okla. 22, 223 P. 640, as previously discussed and it's rationale was later criticized by the Washington Supreme Court in 1969 in *Carkonen v. Williams*, 76 Wash.2d 617, 458 P.2d 280 (1969). Additionally, real property taxation and assessment are governed specifically governed by the Okla. Const. art. 10, §§ 6, 8.

municipal taxes.[38] Nor does Tulsa present any facts showing the mandated fee does anything other than merely recoup the costs of collection. Consequently, there is no reason to consider the fee as anything other than an apparent nominal fee related to the costs of collection.

## CONCLUSION

¶ 37 Given the deference to which the legislative judgment is entitled as to the need and reasonableness of a simplified and streamlined sales and use tax collection for both the state and its political subdivisions, requiring the tax commission to collect municipal sales and use taxes does not unconstitutionally impair Tulsa's pre-existing contract with a private vendor for tax collection. Nor does such a statewide general legislative scheme of municipal tax collection infringe Tulsa's constitutional and charter powers. Accordingly, the trial court is reversed.

**APPEAL PREVIOUSLY RETAINED;
TRIAL COURT REVERSED.**

ALL JUSTICES CONCUR.

---

**38.** The Okla. Const. art. 10, § 20, see note 28, supra; *Board of Com'rs of Grady County et al. v.* *Hammerly,* see note 34, supra; *City of Ardmore v. Excise Board of Carter County,* see note 35, supra.